1997–NMSC–014

933 P.2d 854

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Tommy Wayne WILLIS, Defendant– Appellant.**

**No. 23063.**

Supreme Court of New Mexico.

Feb. 7, 1997.

T. Glenn Ellington, Chief Public Defender, Susan Gibbs, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

Tom Udall, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Jones, Snead, Wertheim, Wentworth & Jaramillo, P.A., Jerry Todd Wertheim, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Shoenburg, John L. Sullivan, for Amicus Curiae New Mexico Criminal Defense Lawyers Association.

## OPINION

RANSOM, Justice.

1. Tommy Wayne Willis pleaded guilty to second-degree murder under NMSA 1978, Section 30–2–1(B) (Repl.Pamp.1994). He later professed his innocence in writing and claimed he pleaded guilty only because he wanted to avoid prosecution for first-degree murder, as defined in Section 30–2–1(A). After a hearing, the trial court ordered withdrawal of the plea. Subsequently, claiming that new evidence necessitated capital charges, the State dismissed the second-degree murder charge and refiled under first-degree murder with the aggravating circumstance of murder of a witness for death-penalty consideration under NMSA 1978, Section 31–20A–5(G) (Repl.Pamp.1994).

2. Willis moved to reinstate his plea of guilty to second-degree murder and to dismiss the capital charges or, in the alternative, to dismiss the death-penalty proceedings. The trial court denied these motions and certified both questions for interlocutory appeal. See Rule 12–203 NMRA 1996 (interlocutory appeal procedure); NMSA 1978, § 39–3–3(A)(3) (Repl.Pamp.1991) (interlocutory appeal in criminal cases). We granted application for interlocutory appeal and now hold that the trial court neither abused its discretion in refusing to reinstate the original plea nor erred in refusing to dismiss the death-penalty proceedings.

3. *Facts and proceedings.* On June 19, 1993, the police responded to a 911 call from Elizabeth Kelton's neighbors, who reported hearing yelling, scuffling, a female crying, and a male voice coming from inside Kelton's duplex apartment. Police arrived a minute-and-a-half or two minutes after receiving the call, but by that time the house was quiet. Inside the house, police found Kelton dead. One of the neighbors told police investigators he saw a man matching Willis's physical characteristics running from the alley behind the house. On the basis of this and other evidence connecting Willis to Kelton's death, the police arrested Willis for her murder. A month later, Willis was charged with second-degree murder, § 30–2–1(B), false imprisonment, NMSA 1978, § 30–4–3 (Repl.Pamp. 1994), and tampering with evidence, NMSA 1978, § 30–22–5 (Repl.Pamp.1994).

4. After pleading guilty to second-degree murder, Willis submitted to the probation officer preparing the presentence report a statement professing his innocence. In this statement Willis said, "I went [to Kelton's duplex] and I found her laying in the tub and I grabbed her to see if she was all right and blood was everywhere so I panicked and ran." According to Willis, he pleaded guilty because a police detective told him that he could be convicted for life if he fought the charge, and because his attorney told him that the prosecutor (Randy Harris) was very likely to dismiss the second-degree charge and refile as first-degree murder if Willis did not plead to second-degree murder.

5. The trial court conducted a hearing to consider the withdrawal of Willis's plea. The court observed that Willis's statement belied a factual basis for the guilty plea and supported the ordered withdrawal of the plea. The court noted the lack of "any narrative in [Willis's statement] that recited a factual basis for making the plea." See Rule 5–304(G) NMRA 1997 (requiring factual basis for guilty plea before court enters judgment upon such plea). Harris stated that it was "appropriate that [Willis] be allowed to withdraw his plea, based upon ... [Willis's] ina-

bility to provide a factual basis for the crime he's previously pleaded guilty to."

6. At the same hearing, Harris stated that it was not his intention to proceed with first-degree-murder charges should Willis withdraw his plea. Harris stated that if Willis proclaimed his innocence he intended to try him for second-degree murder along with the other two charges, but did not intend to prosecute Willis for first-degree murder. Harris noted that, based on the evidence he had at that time, there was less evidence of premeditation and deliberation than in *State v. Garcia*, 114 N.M. 269, 837 P.2d 862, (1992).[1] Willis sought assurances on the record that Harris would not file first-degree-murder charges if Willis withdrew his plea. In response, Harris reiterated that while he believed a jury would convict Willis of first-degree murder with the evidence Harris had at that time, he recognized his ethical duty not to prosecute a defendant for first-degree murder when he knew the conviction would be reversed on appeal. Harris assured the court and Willis that he would not prosecute Willis for first-degree murder if Willis withdrew his plea to second-degree murder.

7. After discovering new evidence several months after the guilty plea was withdrawn, Harris *did* file under first-degree murder, charging either willful, deliberate, and premeditated murder (§ 30–2–1(A)(1)) or felony murder (§ 30–2–1(A)(2)) in the commission or attempt to commit the crimes of aggravated burglary (NMSA 1978, § 30–16–4 (Repl. Pamp.1994)), attempted robbery (§ 30–16–2, robbery; NMSA 1978, § 30–28–1 (Repl. Pamp.1994), attempt), or false imprisonment. Harris then filed a notice of intent to seek the death penalty for murder of a witness to one or more of these crimes. The trial court found probable cause that the aggravating circumstance of murdering a witness exists because there is evidence that Kelton had operated a drug enterprise in her house, that

Willis had gone to her house to steal her supply of drugs and perhaps her money, that she screamed, and that the police arrived almost immediately after receiving the 911 call. On the basis of this evidence, the trial court found probable cause that Willis had killed Kelton when the police arrived outside the house, in order to prevent her from reporting the crimes he committed before the police arrived.

8. *The trial court properly refused to reinstate the guilty plea.—No factual basis.* Willis argues that this Court should reinstate Willis's plea of guilty to second-degree murder and the State should be estopped from prosecuting him under first-degree murder because Willis withdrew his plea in reliance on a bargain with the State. The State contends the plea was properly withdrawn because Willis maintained his innocence. It also asserts that capital charges were brought after the discovery of new evidence and that estoppel does not apply here because there was no court-approved bargain with Willis.

■ 9. Rule 5–304(G) requires the trial court to establish "that there is a factual basis for the plea" before entering a judgment on the plea. At the hearing at which Willis moved to withdraw the plea, the trial court noted on the record that there was no factual basis for the guilty plea. The State also agreed that there was no factual basis for a guilty plea. The plea was withdrawn because Willis's profession of innocence was supported by a factual basis inconsistent with guilt. If not *required* of the trial court, the court's rejection of the plea was at least no abuse of discretion. *See State v. Clark*, 108 N.M. 288, 292, 772 P.2d 322, 326 (1989); *State v. Kincheloe*, 87 N.M. 34, 36, 528 P.2d 893, 895 (Ct.App.1974) (affirming trial court unless its action was unfair, arbitrary, or manifestly erroneous).

---

1. In *Garcia* this Court reversed a jury verdict of first-degree murder where record evidence indicated the defendant and the victim had quarrelled, made up, quarrelled again, and traded punches, before the defendant shoved the victim against a wall and proceeded to cut his face and stab him in the chest. 114 N.M. at 274–75, 837 P.2d at 867–68. We stated that such evidence, while showing intent to kill, did not suffice to show that the defendant had deliberated and premeditated the killing, *id.* at 275, 837 P.2d at 868, as required for first-degree murder, *id.* at 273, 837 P.2d at 866.

**10.** —*No estoppel.* The record supports the State's contention that it filed capital charges after discovering new evidence. A neighbor who had been overlooked in earlier interviews testified in June 1994 that he saw a person matching Willis's description, wearing an abnormally-shaped cap, on the victim's front porch shortly before the screams were heard. A subsequent interview of Willis's girlfriend revealed that on that day Willis was wearing a "do-rag" (a bandanna or nylon stocking protecting one's hairdo). A second interview of another of Willis's friends generated new information that 10 to 14 days prior to Kelton's death, Willis suggested to this friend that they don masks and steal Kelton's marijuana. This friend and Willis previously had bought marijuana from Kelton.

**11.** Based on this evidence, the State refiled under first-degree murder on the theory that Willis had proceeded to rob the victim and when the police arrived on the front porch, he decided to kill his victim and flee through the back alley to avoid detection for the robbery. We address below the question whether prosecution for the aggravating circumstance is warranted. For purposes of determining any bar to refiling under first-degree murder, the record supports the State's contention that it did so based on new evidence. *See United States v. Chemical Found., Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926) (presuming public officials properly discharge their duties in the absence of clear evidence to the contrary).

**12.** *If* the trial court approved a bargain in which Harris agreed not to prosecute Willis for first-degree murder in exchange for Willis's withdrawing his guilty plea to second degree, such an agreement would be enforceable. *See United States v. McGovern,* 822 F.2d 739, 743 (8th Cir.1987) ("Contract principles often provide a useful means by which to analyze the enforceability of plea agreements.") However, neither party should rely on a bargain not specifically approved by the trial court. "A plea agreement is a unique form of contract the terms of which must be interpreted, understood, and *approved* by the trial court." *State v.*

*Mares,* 119 N.M. 48, 51, 888 P.2d 930, 933 (1994) (emphasis added).

**13.** In this case, there was no court-approved bargain between Harris and Willis. The court's decision to order withdrawal of the plea was based on the lack of a factual basis for the plea and Willis's narrative supporting his innocence. Furthermore, Harris's initial reluctance to prosecute Willis for first-degree murder was based on a lack of evidence, while his decision to refile under first-degree murder was occasioned by the discovery of new evidence. In these circumstances, the trial court did not abuse its discretion in refusing to reinstate the plea and refusing to dismiss the first-degree-murder charge.

**14.** *Aggravating circumstance.* Willis argues there are insufficient grounds for the aggravating circumstance of killing of a witness. He also contends that if the statute is read narrowly enough to survive constitutional scrutiny, the evidence does not support the aggravating circumstance of killing of a witness. The State asserts that on evidence in the record at this point, there is probable cause to believe Willis went to Kelton's apartment with the intent to rob her and formed the intent to kill her only after he discovered that the police were outside.

**15.** Section 31–20A–5(G) provides that an aggravating circumstance may be considered by the sentencing court or jury if "the capital felony was murder of a witness to a crime . . . for the purpose of preventing report of the crime." As we stated in *State v. Ogden,* 118 N.M. 234, 240, 880 P.2d 845, 851 (1994), a death-penalty proceeding is proper where the State can show there is probable cause to believe the aggravating circumstance is present. Probable cause means "there is that degree of evidence to bring within reasonable probabilities the fact that a crime was committed by the accused." *State v. Garcia,* 79 N.M. 367, 368–69, 443 P.2d 860, 861–62 (1968). Ultimately, at the sentencing phase, "in order to prove the existence of [the murder-of-a-witness] aggravating circumstance the state must prove [beyond a reasonable doubt] that the killing was motivated by a desire to escape criminal prosecution for an earlier felony committed

against the victim or some other person." *Clark v. Tansy,* 118 N.M. 486, 494, 882 P.2d 527, 535 (1994).

16. The trial court ruled that there was evidence supporting the State's contention that Willis murdered his victim as a witness. Specifically, the court mentioned the following: Willis's suggestion that he and his friend put on masks and rob the victim; neighbors' reports of yelling, scuffling, female crying, and a male voice coming from inside the house; the lack of noise from inside the house by the time the police arrived; and a neighbor's report that a man matching Willis's physical characteristics ran out of the back alley. We believe the probable-cause standard has been met in this case. Whether a jury will find that the State has shown beyond a reasonable doubt that Willis killed his victim "for the purpose of preventing report of a crime" is another question entirely.

17. *Probable-cause standard retained.* Quoting from *State v. Ross,* 180 Ariz. 598, 606, 886 P.2d 1354, 1362 (1994), Amicus Curiae argues that the death-penalty charge should be dismissed unless the State shows (1) "the murder victim is a witness to some other crime, and is killed to prevent that person from testifying about the other crime," (2) "extraordinary circumstances of the crime show, beyond a reasonable doubt, that witness elimination is a motive," or (3) "a statement by the defendant that witness elimination is a motive for the murder." Amicus contends that the evidence at this point fails to fit into any of these three categories. In effect, Amicus urges this Court to abandon the probable-cause standard announced in *Ogden* and replace it with Arizona's bright-line rules.

18. We decline to adopt these bright-line rules because *Ross* is inapplicable to pretrial hearings to consider whether the State may seek the death penalty. The question in *Ross* was whether the State, at the sentencing phase after Ross was convicted of first-degree murder, had shown *beyond a reasonable doubt* that Ross had killed the victim as a witness. 180 Ariz. at 606, 886 P.2d at 1362. The question in this case, by contrast, is whether the State, at the pretrial stage, has

shown *probable cause* to believe a jury could reasonably find that Willis killed the victim as a witness. It would be inappropriate at the pretrial stage to require the State to show beyond a reasonable doubt that Willis killed the victim as a witness. That determination is left to the jury at trial. Applying at the pretrial stage Arizona's bright-line rules, which are designed to determine whether witness elimination has been proved beyond a reasonable doubt, would fail to reflect the purpose for which we have allowed trial courts to review aggravating circumstances: "to screen out only those cases in which the State does not have any significant factual or legal basis for pursuing the death penalty." *Ogden,* 118 N.M. at 240, 880 P.2d at 851. We believe, as we stated in *Ogden,* that the probable cause standard effectively advances this objective. *Id.*

19. *Conclusion.* We hold that the trial court did not err in refusing to allow Willis to reinstate his second-degree guilty plea and that the trial court did not err in refusing to dismiss the death-penalty proceedings. Therefore, we affirm the trial court's rulings and remand for trial in accordance with this opinion.

20. **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, MINZNER and SERNA, JJ., concur.

