# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                     **NO.  29,098**

**ADAM MISQUEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter, Jr., District Judge**

Gary K. King, Attorney General,
Santa Fe, NM

for Appellee

The Rose Law Firm, P.C.
Timothy L. Rose
Ruidoso, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

Defendant appeals his convictions for aggravated fleeing a law enforcement officer, concealing identity, and speeding.  [RP 311 (vol. 2)]  We proposed to affirm

in a notice of proposed summary disposition, and Defendant has filed a timely memorandum in opposition. Remaining unpersuaded by Defendant's memorandum, we affirm his convictions.

**Plea Agreement**

Defendant claims that the district court erred in refusing to enforce the unwritten plea agreement that he allegedly entered with the prosecution. [MIO 2-5; DS unnumbered page 4] In his docketing statement, Defendant contends that as part of the agreement, the State agreed not to file a supplemental criminal information and agreed to a probated sentence. [DS 2] In exchange, Defendant agreed to provide the State with information relating to another pending criminal investigation. [DS 2] He claims that after the State accepted the agreement, Defendant voluntarily cooperated by providing information and insight into the other pending investigation. [DS 2, 4]

In general, a defendant is not entitled to enforcement of a plea agreement until it is approved by the district court. *See State v. Mares*, 118 N.M. 217, 220, 880 P.2d 314, 317 (holding that due process requires enforcement of a plea agreement once it is approved by the district court), *rev'd on other grounds*, 119 N.M. 48, 888 P.2d 930 (1994); *cf. State v. Willis,* 1997-NMSC-014, ¶¶ 12-13, 123 N.M. 55, 933 P.2d 854 (observing that "neither party should rely on a bargain not specifically approved by the trial court"); Rule 5-304(B) NMRA (providing that, after the parties reach a plea

agreement and the agreement has been reduced to writing, it must be disclosed in open court and the trial court "may accept or reject the agreement, or may defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report"). Moreover, a defendant is only entitled to enforce a plea agreement if he can show that he relied on the agreement to his detriment; otherwise, the State's breach of the agreement only requires that the defendant be returned to his original position by withdrawing the plea. *See State v. Bourland*, 116 N.M. 349, 350-51, 862 P.2d 457, 458-59 (Ct. App. 1993) (observing that "Defendants not detrimentally relying on a plea bargain can be returned to their original position by withdrawing their plea" and thus holding that, absent evidence of detrimental reliance by the defendant or a showing that the prosecutor sought to take advantage, a defendant is not prejudiced by the prosecutor's decision to withdraw a plea and thus force a defendant to go to trial).

In our notice of proposed summary disposition, we proposed to agree with the district court that in this case any plea agreement need not be enforced because Defendant failed to meet his burden of proving that he was prejudiced, that he relied on any promise to his detriment, or that he performed any acts in furtherance of the unwritten plea agreement. [RP 183] *See id.* at 350, 862 P.2d at 458 (allowing the prosecutor to withdraw a plea offer after the defendant had accepted it because there

3

was no evidence that the defendant detrimentally relied upon the offer). As discussed more fully in our notice of proposed summary disposition, the record does not support Defendant's contentions that he provided agents with information in furtherance of any plea agreement nor does it support his contention that his alleged performance of the agreement placed his family in danger. [MIO 4-5; DS 2-3] There was evidence in the record from which the district court could conclude that Defendant gave the information to the agents before the parties allegedly agreed to the plea. [RP 189-190, 196] Moreover, there was evidence showing that Defendant only gave information to agents about gang members after those members threatened Defendant and threatened his family by coming to his house. [RP 187-190]

As to lack of demonstrated reliance, Defendant admits that investigators told him they had no authority to offer a deal without the prosecutor's approval. [MIO 3; RP 176, 190] Despite this admission, Defendant claims that the agents never gave the impression that they would be unable to gain the needed approval. [MIO 3] He then argues that he gave them the information based on their apparent authority to broker a deal. [MIO 3-4] We disagree that this apparent authority is sufficient to warrant enforcement of the plea given the agent's express statement of lack of authority and given the evidence showing that Defendant supplied the information before any alleged deal was made. [RP 187-190, 196] In addition, Defendant has failed to cite

4

to any cases supporting his contention that a prosecutor should be required to conform to an agreement merely because a defendant was under the impression the prosecution would agree even though agents told the defendant that they could not guarantee the prosecutor's approval. *Cf. In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court will not consider an issue if no authority is cited in support of the issue).

Finally, in our notice, we observed that it did not appear that the State agreed with Defendant's request to postpone his jury trial in light of the alleged agreement. [DS 2-3] Defendant disputes this observation contending that the parties agreed to the postponement and jointly requested a change of plea hearing. [MIO 2] Although this may be true, we are unpersuaded that this requires enforcement of the plea given that Defendant did not perform any significant acts in furtherance of the plea. To the extent Defendant argues that this continuance constitutes detrimental reliance requiring enforcement of the plea, we disagree. Defendant claims that this continuance was detrimental because it is the only time he agreed to a continuance when he was incarcerated. [MIO 3] However, that contention is belied by the record which indicates he was incarcerated at the time of some of his other motions to continue. [RP 61, 108]

Given the district court's findings of lack of prejudice or reliance which are

5

supported by the evidence showing that Defendant gave the information before he talked to agents, Defendant was threatened before he gave the information, and the investigating agents told Defendant that they were not authorized to make an agreement, we affirm on this issue.

**Aggravated Fleeing**

The jury was instructed that to convict Defendant of aggravated fleeing a law enforcement officer, it had to find that Defendant wilfully and carelessly drove his vehicle in a manner that endangered the life of another person after being given a visual or audible signal to stop by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle in pursuit. [RP 211] NMSA 1978, § 30-22-1.1 (2003). Defendant claims that the district court erred by failing to require the State to prove that an actual person's life was endangered by Defendant's actions in order to convict Defendant of aggravated fleeing. [MIO 5-6; DS 7-8]

As discussed at greater length in our notice of proposed summary disposition, evidence showed that Defendant attempted to evade the officers by driving away and that officers gave chase. [DS 2] Defendant does not dispute our observation that there was testimony that: Defendant did not come to a complete stop at the stop signs as he traveled through a residential area, sparks were seen under Defendant's vehicle as he went through stop signs, and Defendant was driving in the wrong lane at some

6

point. [RP 262, 264; MIO 5-6] Furthermore, he does not dispute that testimony at trial suggested that people were in the general area where Defendant drove because a group of people pointed officers in the direction that Defendant went. [RP 262; MIO 5-6]

Defendant contends that this evidence is insufficient to support the conviction for aggravated fleeing because the State was required to prove that Defendant wilfully endangered the life of another by driving carelessly and that an actual person's life was in fact endangered. [MIO 5-6; DS 3, 8] He argues that the lack of pedestrians or occupied vehicles in the vicinity of Defendant's vehicle during the chase precluded the conviction for aggravated fleeing. [MIO 6; DS 3] We disagree because even if no actual person was placed in danger, Defendant could be convicted of aggravated fleeing on the evidence showing that he was in a residential area and that other people could have been walking in the street or driving. *Cf. State v. Padilla*, 2008-NMSC-006, ¶ 17, 143 N.M. 310, 176 P.3d 299 (stating that "Defendant's criminal liability arises from his knowledge that he was fleeing from a law enforcement officer, and his reckless conduct during the ensuing pursuit"); *State v. Platter*, 66 N.M. 273, 276, 347 P.2d 166 (1959) (holding that there was sufficient evidence to support a conviction for reckless driving based on evidence that the defendant turned left on a sharp curve on the wrong side of the road and then

7

wandered back and forth "across an *ordinarily* heavily traveled highway approaching another sharp curve in such a manner as to likely endanger the safety and lives of persons who *might be* on the highway" (emphasis added)).

Defendant further contends that allowing a conviction in the absence of any proof that someone was actually endangered would allow a conviction when a defendant was merely driving in a careless manner, thus rendering the statutory language "endanger[ing] the life of another" meaningless. [MIO 6] We again disagree because Defendant's actions in intentionally running stop signs and driving in the wrong lane in an attempt to elude the officers present a reasonable probability that someone's life could be endangered even if there is no identifiable person that was at risk. *Cf. Padilla*, 2008-NMSC-006, ¶ 14 (construing misdemeanor fleeing, as opposed to aggravated fleeing, as "[w]hen a person resists, evades, or obstructs an officer by fleeing without willful and careless driving"); *State v. Richerson*, 87 N.M. 437, 443, 535 P.2d 644, 650 (Ct. App. 1975) (holding that there was sufficient evidence that the defendant committed reckless driving, not mere negligence, based upon the defendant's actions of driving 70 mph in a 25-35 mph zone in a residential neighborhood, and on the wrong side of the highway).

We also disagree with Defendant's contention that the aggravated fleeing statute is intended to apply only to high speed chases. [MIO 6; DS 9] The crime is

8

defined as fleeing from an officer by driving in a careless manner that endangers the life of another; there is nothing in the statute indicating that it only applies to high speed chases, and we decline to hold that any such limit should be included by implication. *See* § 30-22-1.1; *State v. McWhorter*, 2005-NMCA-133, ¶ 5, 138 N.M. 580, 124 P.3d 215 (noting that we will give effect to the language of a statute that is clear and unambiguous and refrain from further statutory interpretation); *cf. Padilla*, 2008-NMSC-006, ¶¶ 14-15 (stating that the elements of aggravated fleeing are met when a person knows that an officer is trying to stop him and "the person flees in a manner that endangers the lives of others").

In sum, the evidence shows that Defendant ran through stop signs and drove in the wrong lane while traveling in a residential area and attempting to flee from officers. [RP 262, 264] We are of the opinion that this is sufficient to convict Defendant of aggravated fleeing. *Cf. Padilla*, 2008-NMSC-006, ¶ 17.

**Speeding**

Defendant challenges the sufficiency of the evidence to support his conviction for speeding. [MIO 7; DS 9-10] A sufficiency of the evidence review requires us to view the evidence in the light most favorable to the State, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict. *State v. Romero*, 111 N.M. 99, 101, 801 P.2d 681, 683 (Ct. App. 1990).

9

The evidence shows that the officer saw Defendant's vehicle traveling at a rate that appeared to exceed the speed limit. [DS 9] The officer pushed a button on his radar unit, and the machine read that Defendant was driving at 40 mph. [RP 261; DS 9] There was testimony that the speed limit was 30 mph. [RP 261]

Defendant claims that this evidence is insufficient to convict him of speeding because there was no testimony as to the calibration or reliability of the radar machine. [MIO 7; DS 10] In the absence of this testimony, he claims that the State failed to prove that Defendant was speeding beyond a reasonable doubt. [MIO 7; DS 10] We disagree.

In our notice of proposed summary disposition, we proposed to reject Defendant's challenge based on the State's failure to prove the reliability of the radar machine because it did not appear that Defendant adequately preserved this issue by objecting to the testimony regarding the use of radar. [RP 261-262] *See* Rule 12-216(A) NMRA; *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that to preserve an issue for appeal, the defendant must make a timely objection that specifically informs the trial court of the nature of the claimed error and invokes an intelligent ruling thereon). Defendant concedes that he failed to object to the radar evidence. [MIO 7] However, he claims that the evidence was still insufficient because the accuracy of the radar reading was only as accurate as the

machine itself. [MIO 7] We are unpersuaded.

Defendant admits that he made no objection when the officer testified that he was driving at an excessive rate of speed and that the radar clocked him as going 40 mph. [RP 261; MIO 7] Therefore, Defendant failed to preserve his challenge that the radar readings were unreliable because the trial court did not have an opportunity to rule on Defendant's contention and the prosecution did not have an opportunity to explain why the radar results were indeed reliable. *See State v. Onsurez*, 2002-NMCA-082, ¶ 14, 132 N.M. 485, 51 P.3d 528 (stating that "[w]e do not reach issues on which the [trial] court had insufficient opportunity to rule"); *cf. State v. Granillo-Macias*, 2008-NMCA-021, ¶ 11, 143 N.M. 455, 176 P.3d 1187 (holding that the defendant's general objection as to relevancy and admissibility of the officer's testimony regarding field sobriety tests was insufficient to alert the trial court to the argument on appeal regarding deficiencies in the administration and interpretation of those tests and thus rejecting the defendant's challenge for lack of preservation). Therefore, we conclude that there was sufficient evidence to support Defendant's conviction for speeding.

**CONCLUSION**

For the foregoing reasons as well as those set forth in our notice of proposed disposition, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**