IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2024-NMCA-064

Filing Date: May 14, 2024

No. A-1-CA-40501

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

FERNANDO ORNELAS,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Cindy Leos, District Court Judge

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellee

OPINION

YOHALEM, Judge.

**{1}**    This appeal requires this Court to consider when a plea bargain not yet approved by the district court can be specifically enforced by a defendant. In *State v. Bourland*, 1993-NMCA-117, ¶ 7, 116 N.M. 349, 862 P.2d 457, this Court acknowledged that the state may not withdraw a plea agreement not yet approved by the district court when the defendant shows that they have detrimentally relied on the agreement or the prosecution took unfair advantage. At issue in this case is the district court's conclusion that a two or three month delay in the trial of Defendant Fernando Ornelas caused by

the State's last-minute decision to withdraw its plea offer, combined with the burden on the district court of rescheduling a jury trial during the COVID-19 pandemic, constituted detrimental reliance supporting specific enforcement of the plea agreement. We reverse and remand.

## BACKGROUND

**{2}** Defendant was arrested on February 24, 2021, and charged with felony driving while under the influence of intoxicating liquor (DWI), contrary either to NMSA 1978, Section 66-8-102(A) or -102(C)(1) (2016), and with misdemeanor driving with a revoked license (DWI related), contrary to NMSA 1978, Section 66-5-39.1 (2013). Defendant had eight prior convictions for DWI. A ninth conviction for DWI is punishable by twelve years imprisonment, ten years of which can be suspended, deferred or taken under advisement. *See* § 66-8-102(K).

**{3}** Defendant was taken into custody at the time of his arrest. The State's motion for pretrial detention filed soon thereafter was granted, and the district court ordered that Defendant remain in custody pending trial. The district court determined that Defendant's case was of simple complexity, and assigned it to Track 1, pursuant to the Second Judicial District's pilot program setting time limits by local rule for the resolution of criminal cases. *See* LR2-308(F)(3)(a) NMRA (2018).[1] The local rule requires Track 1 cases to be tried within 210 days (approximately seven months) from arraignment, absent a finding of exceptional circumstances. *See* LR2-308(F)(5)(a). Relying on the exceptional circumstances created by the COVID-19 public health emergency, the district court rescheduled Defendant's original trial date, set within the rule's 210-day period for simple cases, for November 19, 2021, nearly nine months after Defendant's arraignment, and imposed a plea deadline of October 29, 2021.

**{4}** Just two weeks before the plea deadline, the district court approved the public defender's request to substitute new counsel for Defendant. Defendant's new counsel emailed the State about the possibility of a plea agreement a few days after his appointment—approximately a week before the plea deadline. The State responded on the morning of the plea deadline by emailing a plea offer to Defendant's counsel. Apologizing for the delay, the State offered to permit Defendant to plead guilty to aggravated DWI (seventh offense), together with misdemeanor driving on a revoked license. The State would agree to recommend a sentence of five years in prison, minus one day. This sentence was significantly less than the maximum sentence of twelve years' incarceration Defendant could have received if he had been convicted as charged of a ninth DWI. *See* § 66-8-102(K) (stating the sentence for a ninth DWI offense).

**{5}** On the morning of November 9, 2021, the district court confirmed that arrangements for Defendant's scheduled November 17 trial had been made and asked

---

[1] All citations to LR2-308, the special pilot rule governing time limits for criminal proceedings in the Second Judicial District Court, are to the 2018 amendment, which was in place in 2021 when these proceedings took place.

both parties whether a plea agreement had been reached. Defense counsel notified the prosecutor that Defendant wished to accept the State's plea offer, and the State and the Defendant jointly filed a plea certification with the district court the next day, November 10, stating that "[t]he parties . . . have reached a plea agreement, and request the [c]ourt set the matter for a plea hearing." Based on the certification, the district court vacated the trial setting.

{6}     On November 15, 2021, which was five days after certifying the plea to the district court, the State withdrew the plea offer. The prosecutor later explained to the district court that the State offered a plea because the prosecutor had not been able to contact the DWI officer and believed that the officer would not be available to testify at trial, raising a question about the strength of the State's case against Defendant. About an hour after the prosecutor spoke with defense counsel, agreeing that the trial should be vacated based on the plea agreement, and before the certificate of plea and joint motion to vacate the trial were filed, the DWI officer called the prosecutor and indicated he would be available for trial. It was this telephone call and the State's reevaluation of its chances at trial that the State represented prompted it to withdraw from the plea agreement with Defendant.

{7}     Defense counsel filed a motion to enforce the plea agreement. A hearing was held on the motion to enforce on December 14. Defendant sought specific performance of the plea agreement, contending that he had detrimentally relied on the State's offer in giving up his November 17 trial date. Defendant argued that as a result of his reliance on the plea agreement, he would remain in pretrial detention. The time period would extend well past the seven months allowed by LR2-308(F)(5)(a) for Track 1 cases. Defendant claimed that he detrimentally relied on the plea agreement in filing the certification and allowing his trial date to be vacated, and that therefore specific performance of the plea agreement was required.

{8}     The State responded, arguing that a plea agreement is not enforceable until it has been accepted by the district court, and that either party can withdraw from the plea agreement without consequences until it is accepted by the court. At the hearing on Defendant's motion to enforce the plea agreement, the State continued to argue that it was within the exercise of its prosecutorial discretion to withdraw a plea agreement at any time before acceptance by the district court.

{9}     The district court granted Defendant's motion to enforce the plea agreement. The court made the following findings of fact: (1) Defendant had been held in pretrial custody since February 23, 2021; (2) "the only reason the November 17, 2021 trial was vacated was due to Defendant accepting the plea offer extended by the prosecutor on October 29, 2021 and the parties submitting a [p]lea [c]ertification"; (3) the district court was confronting great difficulty in setting matters for jury trial due to the pandemic and "not able to set in-custody cases as quickly as [it] would like"; (4) a new trial date could not be scheduled without "at least a [two to three] month delay in Defendant's case proceeding to trial"; and (5) the prosecution changed its position and withdrew the plea "without regard to the effort that was involved in initially setting the matter for trial and

without regard to Defendant's interest in a speedy jury trial." The district court concluded that it "would indeed set a terrible precedent" to allow the State to change its position and withdraw a plea in a case where Defendant is in custody and the system of setting trials in the district court was so stressed by the COVID-19 pandemic that a significant delay was inevitable. The court also concluded that Defendant's reliance on the plea agreement detrimentally impacted his right to a speedy trial under the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution.

**{10}** The State filed a motion to reconsider. At the hearing on the motion, the State argued that the district court erred in concluding that Defendant had detrimentally relied on the plea agreement, claiming that Defendant did not rely on any promise made by the State, that Defendant knew that the plea agreement was an offer that could be withdrawn until accepted by the court, and that Defendant did not suffer the kind of detriment in reliance on the plea that makes a plea agreement enforceable. The district court denied the motion to reconsider, emphasizing that "we're not in ordinary circumstances," where trials could be quickly rescheduled with no great effort by the court for a defendant in pretrial custody.

**{11}** The district court allowed the State time to file an interlocutory appeal before scheduling Defendant's plea hearing. The State chose not to file an interlocutory appeal, instead waiting to appeal until the plea was accepted by the district court and a final judgment entered.

## DISCUSSION

**{12}** Before addressing the primary question in this appeal—the meaning of the detrimental reliance standard and its application to Defendant's motion for specific enforcement of his plea agreement—we briefly address Defendant's preliminary claim that this Court lacks jurisdiction to consider the State's appeal.

## I. The State Has a Right to Appeal to This Court

**{13}** Defendant claims first that this Court lacks jurisdiction over the State's appeal because the appeal is untimely and then argues that, even if the appeal was filed timely, the State has no statutory or constitutional right to appeal the district court's enforcement of the plea agreement. Finally, Defendant argues that, even if the State has a right to appeal, double jeopardy and due process concerns foreclose the State's requested relief. We address each argument in turn.

## A. The State's Appeal Is Timely

**{14}** Defendant claims that the State's appeal is an interlocutory appeal from the district court's order agreeing to enforce the plea. Because the State's notice of appeal was not filed within thirty days from the entry of that order, Defendant claims the appeal is untimely.

**{15}** In claiming that this is an untimely interlocutory appeal, Defendant mischaracterizes the nature of the State's appeal as interlocutory. The State did not file an interlocutory appeal; it instead waited until the district court entered a judgment and sentence after accepting the plea, and then appealed from the final judgment and sentence. The State's notice of appeal was timely filed, within thirty days of the entry of the judgment and sentence.

**B.     The State's Right to Appeal Is Recognized by the New Mexico Constitution**

**{16}** The State acknowledges that it has no statutory right to appeal from the final judgment entered in this case. The State contends, however, that it has a constitutional right to appeal under Article VI, Section 2 of the New Mexico Constitution. That section provides, in relevant part, that "[i]n all other cases, criminal and civil, the [S]upreme court shall exercise appellate jurisdiction as may be provided by law; provided that an aggrieved party shall have an absolute right to one appeal." N.M. Const. art. VI, § 2. The State's constitutional right to appeal turns on whether the State is an "aggrieved party" under Article VI, Section 2 of the New Mexico Constitution. *See State v. Aguilar*, 1981-NMSC-027, ¶ 3, 95 N.M. 578, 624 P.2d 520 ("[T]he key question presented is whether the [s]tate is an 'aggrieved party' in this case for the purpose of an appeal.").

**{17}** Our Supreme Court has cautioned that "the [s]tate does not have an absolute right to appeal in every situation in which it may feel 'aggrieved' by a trial court's ruling." *Id.* ¶ 7. The state must claim that the challenged disposition by the district court is contrary to law, or "affects matters of grave importance." *State v. Horton*, 2008-NMCA-061, ¶ 9, 144 N.M. 71, 183 P.3d 956. In this case, the issues on appeal are questions of grave importance concerning the parameters that define prosecutorial discretion in entering into plea agreements. New Mexico courts have long recognized the important state interest in plea bargains in the criminal justice system. *See State v. Trujillo*, 1980-NMSC-004, ¶ 18, 93 N.M. 724, 605 P.2d 232 (observing that guilty pleas are an essential part of the New Mexico criminal justice system); *State v. Baca*, 1984-NMCA-056, ¶ 9, 101 N.M. 415, 683 P.2d 970 ("[T]he policy of this state [is] to promote plea bargaining."). This Court has recognized that the nature of the limits on prosecutorial discretion to withdraw from a plea bargain has a significant impact and must be carefully considered so as not to discourage prosecutors from offering plea agreements. *Bourland*, 1993-NMCA-117, ¶¶ 6-7.

**{18}** Because the State seeks review of what it claims is legal error by the district court affecting an interest of grave importance, it is an "aggrieved party" under the New Mexico Constitution and has a constitutional right to appeal. *See Horton*, 2008-NMCA-061, ¶ 9.

**C.     Neither Double Jeopardy Principles nor Due Process Principles Preclude the Requested Relief**

**{19}** Defendant argues that he had an expectation of finality in the sentence imposed following his plea of guilty to aggravated DWI and that the relief sought on appeal,

which would result in a longer sentence, enhanced by an additional prior DWI conviction, is prohibited by both double jeopardy and due process considerations.

**{20}** Defendant first contends that "[i]ncreasing a defendant's sentence after a defendant begins serving the sentence implicates double jeopardy concerns if a defendant's objectively reasonable expectations of finality in the original sentencing proceedings are violated." *State v. Redhouse*, 2011-NMCA-118, ¶ 10, 269 P.3d 8. Determining whether a defendant's expectation of finality in the original sentencing proceeding is objectively reasonable requires an examination of the terms of the written plea agreement and the circumstances surrounding the plea. *See State v. Banghart-Portillo*, 2022-NMSC-021, ¶ 14, 519 P.3d 58. Where a defendant has no reasonable expectation of finality under the circumstances, and where the district court sentences the defendant improperly based on a legal error, double jeopardy does not preclude an increase in the sentence. *Redhouse*, 2011-NMCA-118, ¶ 10.

**{21}** We agree with the State that Defendant did not have a reasonable expectation of finality in his sentence under the terms of this plea agreement. Defendant was repeatedly put on notice in this case of the State's intention to appeal his sentence on the basis that imposing a lesser sentence than required by statute without the State's agreement was illegal. The plea and disposition agreement signed by Defendant plainly states that the State is reserving its right to appeal Defendant's sentence. At the sentencing hearing itself, the State clearly stated that it would appeal the sentence. The State noted that Defendant had eight prior DWI convictions, but that the contested plea agreement allowed him to be sentenced for a seventh offense. The State noted its preservation of its appeal rights and read into the record the paragraph in the plea and disposition agreement stating the State's intent to appeal. The district court noted that the State had made its record, and then proceeded to accept the plea, and then to sentence Defendant. Under these circumstances, we conclude that Defendant did not have a reasonable expectation of finality in his sentence.

**{22}** Defendant also argues, rather perfunctorily, that reversing and allowing a longer sentence to be imposed would be unfair because Defendant will have served a significant portion of his sentence by the time he is resentenced. We do not agree. Due process may bar an increase to an almost completed sentence where the State delays raising an illegality until near the end of a defendant's prison term. *See Redhouse*, 2011-NMCA-118, ¶ 9. Where the sentence is illegal when imposed and the State acts expeditiously, we are not persuaded that resentencing is fundamentally unfair.

## II. The Principles of Law Governing Enforcement of a Plea Agreement Prior to Its Approval by the District Court

**{23}** This appeal requires us to review the district court's application and interpretation of the principles of New Mexico law that govern when a plea bargain is binding on the State, so that it cannot be withdrawn, even though it has not yet been accepted by the district court. We note that there is no challenge on appeal to the district court's findings of fact. This appeal, therefore, focuses on the application of the law to the undisputed

facts in this case. "We review de novo the district court's application of law to the facts." *Giant Cab, Inc. v. CT Towing, Inc.*, 2019-NMCA-072, ¶ 6, 453 P.3d 466; *see State v. Ochoa*, 2008-NMSC-023, ¶ 10, 143 N.M. 749, 182 P.3d 130 ("The application and interpretation of law is subject to a de novo review.").

## A.      The Nature of a Plea Agreement Under New Mexico Law

**{24}**    We begin with the principles of law governing plea agreements. "[A] criminal defendant has no constitutional right to a plea bargain, and the decision whether to offer a plea bargain is a matter within the prosecutor's discretion." *State v. Estrada*, 2001-NMCA-034, ¶ 20, 130 N.M. 358, 24 P.3d 793. Because a defendant has no constitutional right to a plea bargain, and only the right to a trial with full due process protections, courts generally analyze plea bargains by analogy to contract law, while at the same time acknowledging that this analogy is less than perfect. *See Bourland*, 1993-NMCA-117, ¶ 4; *see also United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir. 1980) (recognizing that while principles of contract law "cannot be blindly incorporated into the area of plea bargaining," they "provide a useful analytical framework"), *abrogated on other grounds as recognized by United States v. Grant*, 117 F.3d 788 (5th Cir. 1997).

**{25}**    "Plea bargaining has two aspects: the entering into an agreement and its acceptance by the court." *State v. Taylor*, 1988-NMSC-023, ¶ 23, 107 N.M. 66, 752 P.2d 781, *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 1989-NMSC-055, ¶ 28, 108 N.M. 722, 779 P.2d 99. Generally, a plea bargain is viewed in contract terms as an offer "until the defendant enters a court-approved guilty plea." *Reed v. Becka*, 511 S.E.2d 396, 402 (S.C. Ct. App. 1999). By analogy to contract law, a defendant is viewed as accepting the offer by pleading guilty. *Id.*; *accord Mabry v. Johnson*, 467 U.S. 504, 507 (1984) (holding that generally the plea bargain is "a mere executory agreement"). Because a plea bargain is viewed as an offer, and not a contract between the state and the defendant, courts have generally concluded that "either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court." *Ocanas*, 628 F.2d at 358; *see State v. Mares*, 1994-NMSC-123, ¶ 12, 119 N.M. 48, 888 P.2d 930 ("A plea agreement is a unique form of contract the terms of which must be interpreted, understood, and *approved* by the trial court." (emphasis added)). Consistent with these principles, our Supreme Court has cautioned that "neither party should rely on a [plea] bargain not specifically approved by the trial court." *State v. Willis*, 1997-NMSC-014, ¶ 12, 123 N.M. 55, 933 P.2d 854.

**{26}**    Although a plea agreement prior to its acceptance by the district court is often described as an offer by the state, which does not deprive the defendant "of liberty or any other constitutionally protected interest," *Mabry*, 467 U.S. at 507, the United States Supreme Court, our Supreme Court, and this Court have all acknowledged that a plea agreement has fairness implications and cannot properly be viewed solely through the lens of contract law. *See id.*; *Taylor*, 1988-NMSC-023, ¶ 23; *see also Bourland*, 1993-

NMCA-117, ¶ 3 ("'Plea negotiations between [a] defendant and the state must be governed by fair play on both sides.'" (quoting *Taylor*, 1988-NMSC-023, ¶ 23)).

**{27}** This Court, together with the courts of many other states,[2] has recognized two exceptions to the general rule allowing a prosecutor to withdraw a plea before it is accepted: when the prosecutor withdraws a plea agreement seeking to deceive or take unfair advantage of a defendant, or the defendant has detrimentally relied on the plea agreement. *See Bourland*, 1993-NMCA-117, ¶ 7 (holding that a defendant may not specifically enforce a plea agreement absent "any evidence of detrimental reliance or the prosecutor's seeking to take unfair advantage").

**B.     "Detrimental Reliance" on a Plea Agreement Defined**

**{28}** There is no claim here of misrepresentation, deception, or taking of unfair advantage by the prosecution in entering into the plea agreement or in seeking to withdraw it. We focus, therefore, on the alternative ground for specifically enforcing a plea agreement—detrimental reliance by the defendant.

**{29}** This Court has indicated that a defendant detrimentally relies on a plea when they cannot "be returned to their original position by withdrawing their plea." *Id.* ¶ 3. We have reasoned that without a showing of detrimental reliance, a defendant is in no worse position following the withdrawal of a plea than they would be in if no plea bargain had been made in the first instance. *Id.* Because a defendant has no right to a plea bargain, a jury trial with full due process protections returns the defendant to their original position before the plea was offered and provides "a sufficient remedy." *Id.* The concept of fairness in plea negotiations does not "protect a defendant against shattered expectations," which result when a prosecutor withdraws a plea bargain after a defendant's acceptance but before a guilty plea is entered. *State v. Beckes*, 300 N.W.2d 871, 874 (Wis. Ct. App. 1980). There is detrimental reliance by a defendant, therefore, only when the defendant has suffered prejudice as a result of an action taken in reliance on the plea agreement that cannot be corrected by the usual remedy of allowing the state to withdraw the plea agreement and proceed to trial. *See Bourland*, 1993-NMCA-117, ¶ 3 (citing *Gov't of the Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3d Cir. 1980)).

**{30}** There is no New Mexico precedent applying the detrimental reliance standard to a specific situation. In *State v. King*, 2015-NMSC-030, ¶ 16, 357 P.3d 949, our Supreme Court does not use the term detrimental reliance even though it addresses a factual situation that would support a finding of detrimental reliance based on defendant giving up their Fifth Amendment right to not incriminate themselves. The Court instead focuses its analysis on the State's obligation to fulfill its promise where the defendant has relied on that promise. *Id.* ¶ 15. The defendant in *King* offered to find and turn over to the state

_____

2*See* 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.2(f) (4th ed. 2023) ("The prevailing doctrine is that the [s]tate may withdraw from a plea bargain agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement.").

a weapon used to commit a crime if the state agreed to dismiss a tampering with the evidence charge. Our Supreme Court construed this offer as the defendant proposing a plea agreement to the State. *Id.* ¶¶ 13-14, 18. When the "prosecutor's response . . . led [the d]efendant reasonably to understand that they had an agreement," and the defendant produced the weapon, our Supreme Court held that there had been an exchange of promises, the defendant had performed his promise and the prosecutor had not. The defendant was therefore entitled to specific performance of the agreement they made with the prosecutor. *Id.* ¶¶ 18-19.

{31}   *King* does not use the term "detrimental reliance" or analyze the nature or extent of the detriment to the defendant, but instead focuses on the defendant taking significant action to fulfill his part of a bargain with the state. We do note, however, that the facts of the case clearly show that the defendant's action significantly impacted his Fifth Amendment right to remain silent and would have undermined his defense to the tampering charge, thereby amounting to detrimental reliance by as the term is used by other state courts.

{32}   We next turn to decisions of other state courts, which have more explicitly applied the detrimental reliance standard. These out-of-state cases, like *King*, uniformly conclude that a plea agreement not yet accepted by the court is enforceable based on the defendant's reliance on a commitment or promise made by the State in return for the defendant taking some action which is detrimental to their interests. The facts in many of the cases are strikingly similar to those in *King.* In *State v. Brockman*, 357 A.2d 376 (Md. 1976), for example, the plea bargain at issue provided that, in exchange for the plea offered by the state, the defendant would assist the prosecution by providing evidence against other defendants. Because the defendant complied with that agreement, giving a deposition to the state and providing incriminating information to the prosecution, the Maryland Court of Appeals held that "fairness and equity require that the [s]tate be held to its bargain if the defendant has to a substantial degree and in a proper manner performed his obligations and is willing, . . . to fulfill the remainder of his promises." *Id.* at 384.

{33}   In *Custodio v. State*, 644 S.E.2d 36, 39 (S.C. 2007), the South Carolina Supreme Court similarly held that the defendant in that case "relied on the plea offer to his detriment by taking the substantial step of cooperating with law enforcement, i.e., by performing some part of the bargain, before the [s]olicitor withdrew the plea offer." On this basis, the court enforced the plea agreement.

{34}   In *People v. Macrander*, 756 P.2d 356, 360 (Colo. 1988), the defendant agreed to waive his right to a preliminary hearing in return for the prosecution's agreement to not prosecute him for other crimes and to accept pleas of guilty to the crimes currently charged. The Colorado Supreme Court held that the defendant was entitled to specific performance of the plea agreement based on his detrimental reliance in giving up a preliminary hearing, because "no other remedy is appropriate to effectuate the accused's legitimate expectation engendered by the governmental promise." *Id.* at 361 (internal quotation marks and citation omitted). The Colorado Supreme Court also held

that giving up a preliminary hearing in reliance on a promise from the state, which is not a constitutional right in Colorado unlike New Mexico, was sufficient detrimental reliance to be able to enforce a plea agreement. *Id.* at 360-61 (holding that "a defendant's detrimental reliance need not implicate constitutional rights").

**{35}** In *In re Kenneth H.*, 95 Cal. Rptr. 2d 5, 6 (Ct. App. 2000), the defendant waived certain procedural guarantees and voluntarily submitted to a polygraph examination. The California appellate court held that the defendant had performed some part of the bargain agreed to by the prosecutor, and, therefore, the prosecution was bound by their plea agreement. *Id.* at 9.

**{36}** In all of these cases, the defendants agreed to take a substantial step detrimental to their interest in return for the state's promise of a particular plea. Rather than focusing on the prejudice to the defendant, these courts, like our Supreme Court in *King*, focused primarily on the defendant's fulfillment of some part of a bargained-for exchange with the prosecution that went beyond the mere agreement by the defendant to plead guilty. Where, in contrast, a plea did not demand any action by the defendant other than pleading guilty, courts have held that the plea was not enforceable until the defendant's guilty plea was accepted by the district court. *See, e.g.*, *State v. Therriault*, 485 A.2d 986, 991 n.7 (Me. 1984) (rejecting the passage of time as amounting to detrimental reliance, where the defendant did not engage in any acts promised in the plea agreement in the nine months that elapsed between the state's first proffered plea agreement and modified plea agreement).

### III.     The District Court Erred in Enforcing the Plea Agreement

**{37}** The district court enforced Defendant's plea agreement in this case, even though Defendant's plea had not yet been accepted by the court. The district court based its decision on its findings that Defendant had been in pretrial detention since February 23, 2021, approximately nine months, and a trial could not be rescheduled for at least two to three months, due to the restrictions imposed on jury trials by the COVID-19 pandemic. The district court found that "the only reason the November 17, 2021 trial was vacated was due to Defendant accepting the plea offer extended by the prosecutor on October 29, 2021 and the parties submitting a [p]lea [c]ertification," and concluded that the enforcement of the plea agreement was justified based on the prosecution's disregard for both the impact of its decision to withdraw the plea on Defendant's right to a speedy trial and the burden imposed on the court in rescheduling a jury trial during the COVID-19 pandemic.

**{38}** We do not agree that these factual findings by the district court rise to the level of detrimental reliance required for enforcement of a plea bargain that has not yet been approved by the district court. There is no evidence showing that the prosecution in this case made a promise to Defendant, contingent on Defendant's performance of some action apart from pleading guilty, or that Defendant took some significant action to his detriment in reliance on the plea agreement. Therefore the plea bargain in this case does not fit the model of an enforceable plea agreement in *King*, 2015-NMSC-030, or

the out-of-state cases previously discussed. The district court's findings of fact describe a routine plea bargain, in the nature of an offer by the prosecution, intended to be accepted and to become binding and enforceable only when the district court approved the plea. No promise was made to Defendant in return for his agreement to vacate his trial and schedule a plea hearing. The trial was vacated at the mutual request of the parties simply to allow the plea process to move forward.

**{39}** Although the district court raised important concerns about the efficient administration of justice and Defendant's right to a speedy trial, these concerns are not properly resolved through enforcement of a plea agreement the State wishes to withdraw in the legitimate exercise of its prosecutorial discretion. *See Bourland*, 1993-NMCA-117, ¶ 6 (holding that the interests in judicial efficiency and the administration of justice the district court was attempting to enforce here are not served by not forcing prosecutors to abide by their initial offers).[3]

**CONCLUSION**

**{40}** For the above reasons, we reverse and remand for proceedings consistent with this opinion.

**{41}  IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**

---

[3]We note that it appears to be within the discretion of the district court on remand to consider the prosecution's reasons for delaying the trial date, and to impose sanctions authorized by LR2-308(H) if it determines that the prosecution's reasons for delaying the trial are inadequate or amounted to negligence on the part of the prosecution.