**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2019-NMSC-017**

**Filing Date: October 7, 2019**

**NO. S-1-SC-35922**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant and Cross Appellee,

v.

**LLOYD AGUILAR,**

Defendant-Appellee and Cross Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stanley Whitaker, District Judge**

Released for Publication November 19, 2019.

Bennett J. Baur, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellee and Cross Appellant

Hector H. Balderas, Attorney General
John Kloss, Assistant Attorney General
Santa Fe, NM

for Appellant and Cross Appellee

**OPINION**

**BACON, Justice.**

**{1}** After deliberation in a murder trial, the jury submitted executed verdict forms to the presiding trial judge. Noticing an apparent conflict in the verdicts, the trial judge, without the knowledge or participation of the parties, returned the forms to the jurors and directed them to read the instructions again and clarify their verdicts. The jury subsequently returned revised verdict forms, which the trial judge accepted in open court with the participation of the parties before the jury was discharged. On the following day, the trial judge notified the parties of his previously undisclosed ex parte

contact with the jury. After a post-trial hearing on this issue, the trial court ordered a new trial on all charges on which the jury had returned final verdicts of guilty.

**{2}** Both the State of New Mexico and Defendant Lloyd Aguilar appealed the trial court's order. The State asserts that the trial court's grant of a new trial was in error and Defendant asserts that while the grant of a new trial was appropriate, the principles of double jeopardy bar retrial on the counts of murder and armed robbery. We hold that (1) the trial court's new trial order was not an abuse of discretion, and (2) retrial of the counts on which the jury ultimately returned guilty verdicts would not constitute double jeopardy.

## I.     FACTS AND PROCEEDINGS

**{3}** Defendant was tried on an indictment charging a number of offenses related to a carjacking in which the victim was beaten and shot to death. Several of the charged offenses had complex alternative theories of culpability, which likely resulted in the jury confusion discussed herein.

**{4}** After the State rested its case, the trial court directed verdicts of acquittal for insufficiency of evidence on the charge of willful and deliberate first-degree murder, conspiracy to commit willful and deliberate first-degree murder, and conspiracy to commit unlawful taking of a motor vehicle. The trial court denied Defendant's motions for acquittal on all remaining charges, including first-degree felony murder with a predicate offense of armed robbery, second-degree murder as a lesser-included offense of the first-degree willful and deliberate murder charge, conspiracy to commit first-degree felony murder, and conspiracy to commit second-degree murder.

**{5}** On the remaining charges, the trial court gave the jury thirty-one separate instructions. These instructions were complex and potentially confusing. To illustrate this point, we provide below a detailed discussion of the instructions given to the jury. We highlight two particular aspects of the instructions that may have attributed to the jury's apparent confusion at deliberations. First, the jury was given two different elements instructions and verdict forms for second-degree murder: one for second-degree murder as an included offense of willful and deliberate first-degree murder, and another for second-degree murder as an included offense of first-degree felony murder (as an alternative to willful and deliberate first-degree murder). Second, the jury received a verdict form for "Felony Murder as charged in the alternative to Count 1" and a separate verdict form for "the alternative to Count 1." We discuss these two particularly confusing aspects of the jury instructions, along with the remainder of the instructions below.

**{6}** The jury received separate elements instructions and corresponding guilty and not guilty verdict forms for

• second-degree murder of the victim "as charged in Count 1" (the count for which the trial court had directed a verdict of not guilty on the charge of willful and deliberate first-degree murder)

• first-degree felony murder of the victim "as charged in the alternative to Count 1," and

• second-degree murder of the victim "as an included offense of the alternative to Count 1," where the corresponding elements instruction tracked UJI 14-212(3) NMRA and told the jury it could find Defendant guilty only if it found the State proved "beyond a reasonable doubt" that Defendant killed the victim but "did not cause the death of [the victim] during the commission of armed robbery[,]" among other essential elements of that crime.

{7} After receiving those three homicide elements instructions, the jury received a stepdown instruction that referenced only "the crimes of Felony Murder and Second Degree Murder as charged in the Alternative to Count 1," without mentioning the earlier elements instruction for the crime of second-degree murder of the same victim "as charged in Count 1." This stepdown instruction told the jury that it should initially deliberate on first-degree felony murder and move to second-degree murder only if it did not reach a guilty verdict on felony murder. The instruction cautioned that the jury could "not find the defendant guilty of more than one of the foregoing crimes" without explaining whether the term "foregoing" referred to all homicide crimes on which the jury had received elements instructions or only the two homicide crimes identified in the stepdown instruction. None of the instructions clearly addressed any relationship between the two second-degree murder instructions relating to the same victim.

{8} Although each elements instruction named the crime identified with the count number, a subsequent instruction describing verdict options for each count did little to avoid additional confusion:

> In this case, there are two possible verdicts as to Count 1, Count 2, [and] the alternative to Count 2, Count 3, Count 4, Count 5, and Count 6:
>> (1) guilty; and
>> (2) not guilty.
>
> Only one of the possible verdicts may be signed by you as to each charge. If you have agreed upon one verdict as to a particular charge, that form of verdict is the only form to be signed as to that charge. The other form as to that charge is to be left unsigned.
>
> There are three possible verdicts to the alternative to Count 1 (Felony Murder). See [the stepdown] Instruction. . . .

{9} Along with the thirty-one jury instructions, the jury received twenty-one separate verdict forms to deliberate on and execute.

**{10}** After two partial days of deliberation, the jury submitted a package of verdict forms (the "preliminary verdict forms") to the trial judge. Without notifying counsel, the trial judge reviewed the preliminary verdict forms and noticed that the jury had signed both the guilty verdict form for "Felony Murder as charged in the alternative to Count 1" and the not guilty verdict form for "the alternative to Count 1," a form which did not specify the name of any particular crime. Because the finding of guilty for "Felony Murder as charged in the alternative to Count 1" negates the possibility of also finding Defendant not guilty of "the alternative to Count 1," these forms were necessarily in conflict. The trial judge walked the preliminary verdict forms back to the jury and said, as he recounted later,

> I'm confused about your verdict. I don't know what the verdict is. . . . I think you need to read the instructions again to make sure that you are reading—that you understand them. And then we need to know what the verdict is with regard to the alternative to Count 1. Because I'm not sure what that is.

The trial judge also stated later that this was the only ex parte off-the-record contact between him and the jury.

**{11}** The jury revised the preliminary verdict forms and again submitted the package of forms to the trial court. In these revised verdict forms, the jury voided its preliminary verdict forms that facially indicated a verdict of not guilty "of the alternative to Count 1" and left intact its previous verdict form entry of guilty "of Felony Murder as charged in the alternative to Count 1." It also voided a previously signed not guilty verdict form for armed robbery and signed a guilty verdict form for that charge. The voided forms included strikethroughs of the foreperson's previous signature accompanied by his initials, with the word "VOID" written above the strikethroughs and again below the signature block.

**{12}** The judge notified the parties of the verdict, convened court, and formally accepted the revised verdicts (the "final verdicts") on the record, without yet disclosing the jury's earlier verdict submission or the resulting ex parte contact between the trial judge and the jury.

**{13}** The final verdicts reflected that the jury found Defendant guilty of felony murder as charged in the alternative to Count 1, guilty of conspiracy to commit felony murder as charged in the alternative to Count 2, guilty of armed robbery as charged in Count 3, guilty of conspiracy to commit armed robbery as charged in Count 4, guilty of tampering with evidence as charged in Count 5, guilty of unlawful taking of a motor vehicle as charged in Count 6, not guilty of second-degree murder as charged in Count 1, and not guilty of conspiracy to commit second-degree murder as charged in Count 2.

**{14}** When the jurors unanimously affirmed their final verdicts in a poll conducted in open court before they were discharged, the attorneys, still unaware of either the earlier verdict form submission or the ex parte contact between the trial judge and jury, did not

question the jurors about the differences between the preliminary and final verdicts. The next day, the trial judge disclosed to counsel the earlier off-the-record ex parte exchange with the jury and agreed to consider the parties' input and motions in response.

**{15}** Defendant requested alternative forms of relief in response to the disclosure of the ex parte contact. As related to the issues raised in this appeal, Defendant moved for a dismissal of the felony murder count; in the alternative, Defendant moved for a new trial on all counts except armed robbery, which he moved to dismiss.

**{16}** Following a hearing on Defendant's motions, the trial judge entered a written order granting a new trial "in the interest of justice" as provided in Rule 5-614(A) NMRA (Comm. commentary 2009, amended 2016) on all charges except "Conspiracy to Commit Second Degree Murder as charged in Count 2 and Second Degree Murder as charged in Count 1," the two charges on which the jury had returned not guilty verdicts that were ultimately accepted in open court.

**{17}** Although the new trial order was based on three separate grounds, the State rests its appeal on the trial court's determination that a new trial would serve the interest of justice because of the ex parte contact between the trial judge and jury.[1] As to that ground, the order stated,

> The [c]ourt acknowledges that even though the judicial contact with the jury was ministerial in nature, the unintended result was that the contact could have potentially influenced the jurors' changes to the verdict forms without input from the parties. As a result, in fairness to the Defendant, a new trial is warranted to eliminate any potential prejudice to Defendant.

**{18}** Both parties appealed the trial court's order: the State arguing that the court abused its permissible judicial discretion in granting a new trial and Defendant arguing that the Double Jeopardy Clauses of the United States and New Mexico Constitutions bar retrial of the murder and armed robbery counts.

## II.    DISCUSSION

### A.    Jurisdiction and Standard of Review

**{19}** This Court has exclusive jurisdiction "over interlocutory appeals in situations where a defendant may possibly be sentenced to life imprisonment or death." *State v. Smallwood*, 2007-NMSC-005, ¶ 11, 141 N.M. 178, 152 P.3d 821. Felony murder, as

---

[1]The new trial order was also based on (1) the court's concern that it had committed error and may have prevented a full and fair defense by refusing to permit the jury to see the video of Defendant's interrogation in which Defendant demonstrated to police how the codefendant allegedly had pointed a pistol toward him at the scene of the crime; and (2) the trial court's concern that it may not have handled properly a defense challenge to alleged prosecutorial misuse of peremptory challenges to the seating of prospective jurors.

defined in NMSA 1978, Section 30-2-1(A) (1994), is an offense that is punishable by life imprisonment.  NMSA 1978, § 31-20A-2 (2009).

**{20}**    Both parties are entitled by law to interlocutory review of the trial court's order, based on their claims about how the trial court erred.  *See Carrillo v. Rostro*, 1992-NMSC-054, ¶ 20, 114 N.M. 607, 845 P.2d 130 (noting that a trial court's denial of a motion to dismiss a pending prosecution on double jeopardy grounds is appealable because the claimed right not to stand trial at all "cannot be effectively vindicated after the trial has occurred") (internal quotation marks and citation omitted); *State v. Griffin*, 1994-NMSC-061, ¶ 11, 117 N.M. 745, 877 P.2d 551 (holding that the State may pursue an interlocutory appeal when it makes a claim that a new trial order "was based on an erroneous conclusion that prejudicial legal error occurred during the trial").

**{21}**    "We generally review double jeopardy claims de novo . . . , [but] where factual issues are intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review."  *State v. Baca*, 2015-NMSC-021, ¶ 25, 352 P.3d 1151 (alteration and omission in original) (internal quotation marks and citation omitted).

**B.      The Trial Court Did Not Abuse Its Rule 5-614(A) NMRA Discretion When It Ordered a New Trial "In The Interest of Justice"**

**1.      A trial court's discretionary order granting a new trial is reviewed on appeal for manifest abuse of discretion**

**{22}**    The State presents a single issue on its appeal from the trial court's grant of a new trial: whether the trial judge erred in granting a new trial on the ground that the court's ex parte contact may have prejudiced the Defendant, despite the fact that the trial court stated that it believed its ex parte contact with the jury about their proposed verdicts was ministerial and not related to the subject matter of the court proceedings.

**{23}**    In order to address this issue, we first review the law governing a trial court's authority to grant a new trial in the interest of justice and an appellate court's standard of review of a new trial order.

**{24}**    Rule 5-614(A) provides that "[w]hen the defendant has been found guilty, the court on motion of the defendant, or on its own motion, may grant a new trial if required in the interest of justice."

**{25}**    In criminal cases, there are two primary categories of new trial motions with different time requirements and different review standards.  One is a motion for new trial based on newly discovered evidence, which may be filed within two years after the trial under Rule 5-614(C) and which is specifically governed by a particular set of standards under our case law.  *See State v. Volpato*, 1985-NMSC-017, ¶ 7, 102 N.M. 383, 696 P.2d 471 (setting out particularized requirements).  This appeal presents no newly discovered evidence issues.

**{26}** The other category is far broader, authorizing a trial court to grant a new trial "on any other grounds" within the narrow time constrains of the rule. Rule 5-614(C). The governing standard is whether the trial judge determines a new trial is required "in the interest of justice," as articulated in Rule 5-614(A). This term has a history of interpretation in the federal courts, where Rule 33(a) of the Federal Rules of Criminal Procedure authorized granting a new trial "in the interest of justice" long before the 1972 adoption of the New Mexico Rules of Criminal Procedure. *See, e.g.*, *United States v. Smith*, 331 U.S. 469, 472 (1947) (observing that the "rule is declaratory of the power to grant a new trial 'in the interest of justice' instead of for reasons catalogued as they might have been").

**{27}** The federal courts have recognized that the authority to grant a new trial is discretionary and is not limited to situations in which reversible error has been committed:

> The basis for granting a new trial under Rule 33 is whether it is required "in the interest of justice." That is a broad standard. It is not limited to cases where the district court concludes that its prior ruling, upon which it bases the new trial, was legally erroneous.

*United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994) (upholding order granting a new trial in the interest of justice); *see also United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989) ("[C]ourts have interpreted the rule to require a new trial 'in the interest of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial."); *United States v. Scroggins*, 485 F.3d 824, 831 (5th Cir. 2007) ("A miscarriage of justice warranting a new trial in certain circumstances may occur even when there has been no specific legal error." (internal quotation marks and citation omitted)); *United States v. Patterson*, 41 F.3d 577, 579 (10th Cir. 1994) (rejecting the argument that a trial judge erred in granting a new trial in the absence of reversible error in the record).

**{28}** New Mexico precedent similarly recognizes the broad discretion of a trial court to grant a new trial in the interest of justice. The trial court has a broader power than an appellate court to grant a new trial to prevent miscarriages of justice "even though a defendant is not entitled to a new trial as a matter of right." *State v. Fuentes*, 1959-NMSC-060, ¶¶ 19-21, 66 N.M. 52, 342 P.2d 1080. "[T]he function of passing on motions for new trial belongs naturally and peculiarly to the trial court." *State v. Smith*, 1986-NMSC-038, ¶ 17, 104 N.M. 329, 721 P.2d 397, *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 1989-NMSC-055, ¶ 28, 108 N.M. 722, 779 P.2d 99. "[W]e will not disturb a trial court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." *State v. Garcia*, 2005-NMSC-038, ¶ 7, 138 N.M. 659, 125 P.3d 638. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-

NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted).

**{29}** Our law recognizes an important distinction in reviewing a trial court's exercise of discretion in granting or denying new trials. Although the standard of appellate review is abuse of discretion in both cases, "a much stronger showing is required to overturn an order granting the new trial than denying a new trial." *Griffin*, 1994-NMSC-061, ¶ 12 (alteration, internal quotation marks, and citation omitted). When a trial court denies a new trial, the question on appeal is whether there was reversible error that would require the appellate court to order a new trial; but when the appellate court is reviewing a grant of a new trial, the grant can be affirmed as within the trial court's discretion even where the trial court would also have been acting within its discretion to deny the new trial motion. *See, e.g.*, *Mares v. State*, 1971-NMSC-106, ¶¶ 2, 5, 14-15, 83 N.M. 225, 490 P.2d 667 (reversing denial of a new trial motion based on post-trial revelation that a juror had been present for part of the investigation of the crime scene, where the juror's good friend was a victim, as an abuse of discretion); *State v. Guerra*, 2012-NMSC-027, ¶ 21, 284 P.3d 1076 (affirming denial of new trial motion where two prosecution exhibits were inadvertently left on counsel table and not furnished to the jury, on determination by this Court that the trial court properly found the error to be harmless); *State v. Moreland*, 2008-NMSC-031, ¶¶ 9, 22, 144 N.M. 192, 185 P.3d 363 (affirming district court's grant of new trial "[b]ecause the trial judge has observed the demeanor of the witnesses and has heard all the evidence, . . . the function of passing on motions for new trial belongs naturally and peculiarly to the trial court" (omission in original) (internal quotation marks and citations omitted)).

**{30}** We agree with the view that a trial court should exercise its broad new trial authority "sparingly and with caution[,]" *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980), but our precedent instructs that, in light of the trial court's authority, "an appellate court will reverse the district court's decision only on a showing of abuse of discretion." *State v. Guerra*, 2012-NMSC-014, ¶ 45, 278 P.3d 1031. Because a trial court abuses its discretion when it acts in an "obviously erroneous, arbitrary, or unwarranted manner[,]" *State v. Johnson*, 2010-NMSC-016, ¶ 31, 148 N.M. 50, 229 P.3d 523, we must examine the circumstances that led to the trial court's determination that a new trial was in the interest of justice. In our examination, we keep in mind that our standard of review is particularly deferential because the trial court granted a new trial. *Griffin*, 1994-NMSC-061, ¶ 12.

## 2. The trial court did not abuse its discretion in ordering a new trial

**{31}** Despite the fact that the trial court based its new trial order on three separate perceived trial errors, the State takes issue only with the belatedly disclosed ex parte contact between the trial judge and jury. We address the ex parte contact issue because of its importance to the proper conduct of criminal trials in this State.

**{32}** Rule 5-610(D) NMRA imposes strict limitations on case-related communications between a trial judge and a deliberating jury:

D.    Communications; judge and jury.  The defendant shall be present during all communications between the court and the jury unless the defendant has signed a written waiver of the right to be personally present.  All communications between the court and the jury must be in open court in the presence of the defendant and counsel for the parties unless the defendant waives on the record the right to be present or unless the communication involves only a ministerial matter.  Unless requested by counsel for the defendant, communications between the court and the jury on a ministerial matter may be made in writing after notice to all counsel without recalling the defendant.

**{33}**    As the State concedes, the trial court clearly violated Rule 5-610(D) by communicating with the jury orally, not in open court, and without proper notification to and oversight by the parties.  However, the State, relying heavily on *State v. Jojola*, 2006-NMSC-048, 140 N.M. 660, 146 P.3d 305, argues that the trial court's ex parte and off-the-record communication with the jury was merely ministerial and unrelated to the issues of the case and therefore the improper communication was not reversible error according to our case law.

**{34}**    We agree with the State that *Jojola* is the New Mexico precedent most instructive in this case.  In *Jojola*, although we affirmed the Court of Appeals in its reversal of a conviction obtained after unauthorized contact between the trial judge and a deliberating jury, we granted certiorari "to clarify our case law" regarding ex parte communications between judge and jury and "to describe the history and rationale of Rule 5-610(D)."  *Id.* ¶ 1.  We disagree with the State's contention that *Jojola* supports its challenge to the new trial order in this case.

**{35}**    To begin with, the procedural context of *Jojola* was significantly different.  In *Jojola*, we did not hold that a trial judge's improper contact with a jury had to constitute reversible error in order to support a new trial order on appeal.  The Court in *Jojola* never considered or addressed the issue of the trial judge's discretion to order a new trial in unauthorized contact situations.  Not only did the trial court in that case not order a new trial, no motion for new trial was even made.  Instead, we held that because "the State did not rebut the presumption of prejudice that arises from an improper communication" between judge and jury, reversible error required us to vacate the conviction on appeal and remand for a new trial.  *See id.* ¶ 13.

**{36}**    Second, the substance of the holding in *Jojola* supports the discretionary grant of a new trial in this case.  In *Jojola*, the foreperson of a deliberating jury approached the trial judge privately to report that one juror was holding out for acquittal because she refused to accept the testimony of one of the police witnesses and insisted she would not change her mind.  *Id.* ¶ 2.  Instead of terminating the conversation at the outset and notifying the parties, the trial judge, as he later recounted, continued the oral ex parte conversation and told the foreperson "to continue and do whatever she had to do and just report—just report to me and I could handle it from there."  *Id.*  After the foreperson returned to the jury room and while the jury was still deliberating, the trial judge informed

counsel of the ex parte contact, instead of waiting until after the jury had returned its verdict and been discharged, as happened in this case. *Id.* Shortly afterward, the jury returned verdicts of guilty. *Id.*

**{37}** In *Jojola*, we noted that both our precedent and our procedural rules "provide guidance in determining whether a judge's ex parte communication with a juror is acceptable in the first instance, and whether reversal is warranted on appeal" if the communication is unacceptable. *Id.* ¶ 3. With respect to the propriety of ex parte oral communications on any subject, the answer is absolutely clear: such contact is never acceptable. *Id.* ¶ 8 (emphasizing that Rule 5-610(D) "does not allow for private, oral communications between a judge and an individual juror[,]" even when the communications merely relate to housekeeping matters that are not relevant to the case). The trial judge in this case was clearly wrong when he stated at the post-verdict hearing that he did not "think that the contact with the jury was improper[.]"

**{38}** As we observed in *Jojola*, our concern is not with "the competency or good faith of the trial judge, but rather the lack of a record and the potential harm that may arise from 'having one juror serve as a conduit for communicating instructions to the whole panel.' " *Id.* ¶ 10 (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 461 (1978)).

**{39}** Communications relevant to the case are governed by even more stringent requirements than those that pertain to pure housekeeping matters:

> [C]ommunications between judge and jury relevant to the case [must] occur in open court and in the presence of the defendant, unless presence is waived in writing. Not only does this insure that all communications relevant to the case occurring between judge and jury are captured by a stenographer or other recording device, it also avoids the problem of a judge having to decide solely on the basis of defense counsel's representations whether a defendant voluntarily, knowingly, and intelligently waived his right to be present.

*Id.* ¶ 8 (emphasis omitted).

**{40}** As in *Jojola*, because the ex parte oral contact here was concededly improper, we proceed to determine whether Defendant may have been prejudiced. The analysis of prejudice differs for case-related and housekeeping contacts. Communications that can properly be characterized as housekeeping or ministerial relate to such matters as "a juror's personal comfort or responding to a simple request for an extra copy of the written jury instructions already provided to the jury." *Id.* ¶ 9. Such communications do "not give rise to a presumption of prejudice." *Id.* ¶ 6.

**{41}** In contrast, where an unlawful communication has taken place that is related to the case, rather than a housekeeping or ministerial matter, our law imposes a presumption of prejudice "and the State bears the burden of rebutting that presumption

by making an affirmative showing on the record that the communication did not affect that jury's verdict." *Hovey v. State*, 1986-NMSC-069, ¶ 12, 104 N.M. 667, 726 P.2d 344; *see id.* ¶¶ 4, 8, 14, 20 (reversing the Court of Appeals and holding that the record failed to rebut the presumption of prejudice resulting from defense counsel's purported waiver of the defendant's presence during a written communication with the jury).

**{42}** The State argues that the presumption of prejudice required by our case law for case-related contacts should not apply, arguing that the trial judge's ex parte communication related to mere housekeeping, instead of to the case the jury was deciding. We disagree.

**{43}** The oral exchange between the trial judge and jury foreperson about the jury's return of verdict forms reflecting votes of conviction and acquittal on Defendant's felony murder charges was undoubtedly related to the case. The one clear message conveyed by the trial judge's comments was that the jury's executed verdicts in the case were wrong in some respect and should be reconsidered. It would be incorrect to characterize such a communication as a mere housekeeping matter. It certainly was more case-related than the relatively nonjudgmental comments of the trial judge in *Jojola*. Therefore, we presume that Defendant was prejudiced by the trial judge's communications with the jury.

**{44}** Given the severe limitations on asking jurors about their deliberations and thought processes, the burden of overcoming the presumption of prejudice is necessarily a difficult one. *See, e.g.*, *State v. Mann*, 2002-NMSC-001, ¶ 18, 131 N.M. 459, 39 P.3d 124 ("[Rule 11-606(B) NMRA] prohibits a juror from testifying as to any matter or statement made during the course of deliberations or to the juror's mental processes.").

**{45}** In this case, as in *Jojola*, "the only record of the conversation that we have is what the judge offered to the parties after the conversation had already taken place." 2006-NMSC-048, ¶ 11. Because the trial judge did not disclose the contact until a day after the jury was discharged, neither party attempted to address the issue in polling the jury. Neither the jury foreperson nor any other witness was called to testify at the post-conviction hearings. Even if we could credit the trial judge with perfect recall of each word of the off-record conversation with the foreperson, "we are left to speculate about how the juror interpreted the judge's comments and gestures and about what the juror reported to the rest of the jury back in the jury room." *Id.* At the post-conviction hearings, the defense pointed out that the State was relying only on speculation that the unlawful contact might have influenced the jury's changed verdicts. The trial judge responded by emphasizing that, "we're all speculating" about the causal effect of the trial court's contact with the jury. We agree.

**{46}** The defense was further prejudiced by its lack of knowledge of the unlawful communication in a timely fashion, so that the differences between the preliminary and final verdict forms could have been addressed and clarified by polling the jurors before the trial court discharged the jury. In these circumstances, given the improper

communication between the trial judge and jury and its prejudice to Defendant, we conclude that it was not an abuse of discretion for the trial judge to grant a new trial.

## C. Retrial of the Murder and Armed Robbery Counts Would Not Constitute Double Jeopardy

**{47}** In his cross-appeal, Defendant asserts that the trial court erred by denying his motion to dismiss the armed robbery and felony murder counts based on double jeopardy grounds because the jury signed the not guilty forms for these counts, announced it had reached verdicts, and handed the forms to the trial judge or the trial judge's bailiff–all prior to the trial judge's ex parte communication with the jury. Defendant further breaks his double jeopardy argument into four parts: (1) the trial court's actions created an ambiguity in the jury's decision because of the contradictions between the preliminary and final verdict forms and that these contradictions bar retrial; (2) the preliminary verdict forms acquitted Defendant of armed robbery and the trial judge was compelled to enter a verdict of not guilty for the offense; (3) the jury's preliminary verdict on the alternative count of felony murder was contradictory on its face (simultaneously denoting "guilty" and "not guilty" of felony murder), which required the trial court to clarify this ambiguity and potentially conclude that double jeopardy barred retrial; and (4) the trial court's conduct was so egregious and incurable that double jeopardy principles bar retrial.

**{48}** "[T]he Double Jeopardy Clauses of the Fifth Amendment of the United States Constitution and Article II, Section 15 of the New Mexico Constitution prevent the State from . . . repeated attempts to convict an individual for an alleged offense[.]" *State v. Baca*, 2015-NMSC-021, ¶ 20, 352 P.3d 1151 (internal quotation marks and citations omitted); *see* U.S. Const. amend. V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]"); N.M. Const. art. II, § 15 ("[N]or shall any person be twice put in jeopardy for the same offense[.]"). We have said that "[p]erhaps the most fundamental rule" of the Double Jeopardy Clause is "that a verdict of acquittal . . . [cannot] be reviewed, on error or otherwise, without putting a defendant twice in jeopardy, and thereby violating the Constitution." *Baca*, 2015-NMSC-021, ¶ 21 (alterations and omission in original) (internal quotation marks and citation omitted).

**{49}** As stated previously, although we review claims of double jeopardy de novo, where factual issues direct this Court's double jeopardy analysis, we apply a deferential standard of review to the trial court's factual findings. *Id.* ¶ 25. We will not substitute our judgment of the facts for that of the trial court, we will not reweigh the evidence, and we will accept all reasonable inferences supporting the findings of fact. *Id.*

**{50}** The first three sections of Defendant's double jeopardy argument rely upon Rule 5-611 NMRA and *State v. Phillips*, 2017-NMSC-019, 396 P.3d 153. Neither Rule 5-611 nor *Phillips*, however, are suitable to the facts before us.

**{51}** Rule 5-611(A) requires that a verdict "shall be returned by the jury to the judge in open court." Rule 5-611(E) provides that "[w]hen a verdict is returned and before it is

recorded, the jury shall be polled at the request of any party or upon the court's own motion." Defendant asserts that the trial court's failure to follow Rule 5-611(A) subverted his ability to ask the trial court to poll the jury pursuant to Rule 5-611(E).

**{52}**  Defendant's argument presupposes that the preliminary verdict forms were, in fact, the "verdict" for purposes of Rule 5-611.  However, this Court has said that a verdict is not final until it is "rendered by the jury in open court and accepted by the court." *Phillips*, 2017-NMSC-019, ¶ 18 (citing *Harrison v. Gillespie*, 640 F.3d 888, 899 (9th Cir. 2011) ("Because of the significance of the entire deliberative process, the jurors' preliminary votes in the jury room do not constitute a final verdict, even if they are unanimous.  Instead, the verdict must be rendered by the jury in open court and accepted by the court in order to become final.") (citations omitted)); *see also State v. Holloway*, 1987-NMCA-090, ¶¶ 23-24, 106 N.M. 161, 740 P.2d 711 (concluding that jurors are not bound by their votes in the jury room and may alter their individual verdicts at the time the jury is polled).  There is no question that the jury's preliminary verdict forms were not "rendered by the jury in open court and accepted by the court." *Phillips*, 2017-NMSC-019, ¶ 18.  The jury's preliminary verdict forms were no more than an initial vote, and therefore do not serve as a basis for Defendant's Rule 5-611 double jeopardy challenge to retrial.

**{53}**  Defendant's reliance on *Phillips* is likewise inapposite.  In *Phillips*, this Court addressed what the trial court must do to ascertain whether a jury is deadlocked.  At trial, the jury indicated that it was deadlocked on the greater offense charged, first-degree murder. *Id.* ¶¶ 8-11.  There was no signed verdict form presented to the trial court. *Id.* ¶ 18.  To understand whether the jury was in fact deadlocked, the trial court polled the jurors. *Id.* ¶ 10.  The jury poll revealed that seven jurors believed that they had unanimously agreed on first-degree murder, but five jurors believed they were deadlocked. *Id.* ¶ 11.  The five jurors stated they were deadlocked after the trial court instructed them that "'deadlocked' meant they could not agree on a *verdict*." *Id.*  Due to deficiencies in the verdict form, there was no written record of whether the jury had acquitted the defendant or deadlocked. *Id.* ¶ 2.  After polling the jury, the trial court concluded that the jury was deadlocked on first-degree murder, declared a mistrial, and reserved the State's right to retry the defendant on every crime in Count 1. *Id.* ¶ 12.  On review, we concluded that the trial judge failed to establish clearly on the record whether the jury deadlocked on first-degree murder or agreed that the defendant was not guilty. *Id.* ¶ 18.  Due to the incurable confusion regarding the jury's verdict, we concluded that double jeopardy attached to the first- and second-degree murder counts. *Id.*

**{54}**  Here, unlike in *Phillips*, there was no indication at the time the jury returned to open court that they were deadlocked.  The jury's final verdict forms, presented in open court and accepted by the trial court, reflected unanimity by the jury.  The final set of jury verdicts were the true verdict of the jury, *see id.* ¶ 18, and therefore, the procedure to determine whether a jury is deadlocked provided in *Phillips* is not applicable to the facts before us in this case.

**{55}** As an alternative ground for this Court to apply double jeopardy principles to bar Defendant's retrial on any of the charges, Defendant equates the trial judge and his conduct here with the prosecutorial misconduct in *State v. Breit*, 1996-NMSC-067, 122 N.M. 655, 930 P.2d 792. Defendant does little to develop this argument in his briefing and therefore, we do not need to address it. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that appellate courts "will not review unclear arguments, or guess at what" a party's arguments might be). Were Defendant's *Breit* argument more developed, however, it would not alter this Court's conclusion. In *Breit*, we held that principles of double jeopardy bar retrial where prosecutorial misconduct is pervasive, incessant, and outrageous. 1996-NMSC-067, ¶ 37. In *Breit*, the prosecutor exaggerated claims, referenced matters that were not admissible, argued with witnesses, posed improper questions to witnesses, directed belligerent statements toward opposing counsel, and engaged in sarcasm and scorn toward opposing counsel. *Id.* ¶¶ 41-43. *Breit* is not applicable to this matter. The trial court's ex parte communication with the jury bears no resemblance to the pervasive misconduct found in *Breit*.

## III. CONCLUSION

**{56}** For the foregoing reasons, we affirm.

**{57} IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**PETRA JIMENEZ MAES, Justice, Retired**

**GARY L. CLINGMAN, Justice, Retired**