IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-025

Filing Date: June 13, 2011

Docket No. 31,905

STATE OF NEW MEXICO,

    Plaintiff-Appellee,

v.

ALBERT JOSE RAMIREZ,

    Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Teddy L. Hartley, District Judge

Carlos Ruiz De La Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

OPINION

CHÁVEZ, Justice.

{1}     The crux of this appeal is whether Defendant Albert Jose Ramirez (Defendant) knowingly, intelligently, and voluntarily entered into his plea agreement with the State. At Defendant's plea hearing, Defendant expressed confusion about sentencing, the premeditation element of his first degree murder charge, and culpability for his assault and battery charges. Apparently recognizing Defendant's hesitation and confusion, the prosecutor asked the district court to inquire further on the record whether Defendant understood the plea and that he was "willfully" entering into the plea agreement. Although the district court acknowledged the need to do so, the court failed to adequately confirm on

1

the record Defendant's understanding of the plea and its consequences as required by New Mexico law. Accordingly, we reverse and remand to allow Defendant to withdraw his plea.

{2}    Defendant reached an agreement with the State whereby he pled guilty to murder in the first degree (premeditated), contrary to NMSA 1978, Section 30-2-1(A)(1) (1994); battery upon a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971); and assault upon a police officer, contrary to NMSA 1978, Section 30-22-21 (1971). Defendant was sentenced to a term of life imprisonment for the murder charge with concurrent sentences of 18 months for the battery charge and 364 days for the assault charge. Because Defendant received a life sentence, we review Defendant's appeal directly from the district court, pursuant to Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA. *See State v. Smallwood*, 2007-NMSC-005, ¶ 6, 141 N.M. 178, 152 P.3d 821 ("[O]ur appellate jurisdiction extends to appeals from district court judgments imposing a sentence of life imprisonment or death.").

{3}    Defendant raises four issues for our review: (1) whether Defendant was competent to stand trial; (2) whether Defendant's motion for additional competency evaluation was improperly denied; (3) whether the district court erred in denying Defendant's motion to withdraw his plea; and (4) whether trial counsel's performance constituted ineffective assistance of counsel. We reverse on the basis that the district court erred in denying Defendant's motion to withdraw his plea. In particular, we conclude that Defendant's plea was not "knowing, intelligent, and voluntary." *See Marquez v. Hatch*, 2009-NMSC-040, ¶ 12, 146 N.M. 556, 212 P.3d 1110 (internal quotation marks and citation omitted). Because this finding is dispositive, we do not address Defendant's other claims.

{4}    Defendant's convictions arose from the July 12, 2007 killing of his mother's boyfriend, Eladio Robledo (Victim), in Curry County. Defendant was indicted by the Ninth Judicial District grand jury on July 20, 2007. After being initially determined incompetent to stand trial, the district court adjudged that Defendant was restored to competency following approximately three months of treatment and evaluation at the New Mexico Behavioral Health Institute (Behavioral Health Institute) in Las Vegas.

{5}    Defendant's trial began with jury selection on January 26, 2009. Following a break in that process, the parties informed the district court that a plea agreement had been reached in which Defendant pled guilty to three charges, including first degree premeditated murder. The court then conducted a twenty-minute plea hearing in which the judge concluded that Defendant had "knowingly, intelligently, and voluntarily" accepted the plea, despite statements made by Defendant to the contrary. Among Defendant's contentions was that the act of killing Victim was not premeditated, undermining the validity of his plea to the first degree murder count. The district court deflected Defendant's claims, declined to conduct additional inquiries of Defendant, and left the plea agreement intact.

{6}    A month later, Defendant filed a motion to withdraw his guilty plea, arguing that his plea was neither knowing nor intelligent due to the mental health problems that gave rise to

2

his commitment to the Behavioral Health Institute. At the hearing regarding Defendant's plea withdrawal motion, Defendant reiterated this argument and augmented it with others, including claims that he did not understand the elements of the crimes covered by the plea or the sentencing to be imposed under the agreement. The district court rejected the claims, concluding that Defendant had been adequately informed of the plea details by defense counsel.

**BECAUSE THE DISTRICT COURT FAILED TO ASCERTAIN ON THE RECORD THAT DEFENDANT'S PLEA WAS KNOWING, INTELLIGENT, AND VOLUNTARY, THE DISTRICT COURT'S ACTION CONSTITUTES AN ABUSE OF DISCRETION THAT WARRANTS REVERSAL**

{7}     In this appeal, Defendant once again claims that the district court failed to ascertain whether Defendant "knowingly and voluntarily" entered his guilty plea. Defendant contends that his mental health problems undermined his capacity to enter the guilty plea and he "expressed considerable confusion and frustration" during the plea hearing. He also argues that the district court's failure to clarify Defendant's understanding of the plea and the court's subsequent denial of Defendant's motion to withdraw the plea constitute error.

{8}     A guilty plea in a state criminal court involves the waiver of "three important federal [constitutional] rights." *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). In addition to waiving the Fifth Amendment right against self-incrimination, a plea also implicates certain due process entitlements of the Sixth Amendment, including the right to a jury trial and the right to confront one's accusers. *Id.* at 242-43; *State v. Montler*, 85 N.M. 60, 61, 509 P.2d 252, 253 (1973). In addition, "we review the trial court's denial of a defendant's motion to withdraw his guilty plea for an abuse of discretion." *State v. Barnett*, 1998-NMCA-105, ¶ 12, 125 N.M. 739, 965 P.2d 323. The "trial court abuses its discretion when it acts unfairly or arbitrarily, or commits manifest error." *Id.* "A denial of a motion to withdraw a guilty plea constitutes manifest error when the undisputed facts establish that the plea was not knowingly and voluntarily given." *State v. Garcia*, 1996-NMSC-013, 121 N.M. 544, 546, 915 P.2d 300, 302.

{9}     A plea is not knowing, intelligent, and voluntary unless the defendant "understand[s] his guilty plea and its consequences." *Id.* at 547, 915 P.2d at 303; *see also Boykin*, 395 U.S. at 243-44 (explaining that state trial courts should "make sure [a defendant] has a full understanding of what the plea connotes and of its consequence[s]"). Rule 5-303(F) NMRA codifies the matters our district courts must address to ascertain that a defendant grasps the contents and consequences of a plea. In relevant part, Rule 5-303(F) provides:

> The court shall not accept a plea of guilty or no contest without first, by addressing the defendant personally in open court, informing the defendant of *and determining that the defendant understands* the following:
>
>> (1) the nature of the charge to which the plea is offered;

(2) the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered, including any possible sentence enhancements.

(Emphasis added.) In order to ensure that the defendant understands "the nature of the charge[s]," *id.*, the district court must be satisfied that the defendant understands the essential elements of the charges that are subject to the plea. *See Garcia*, 121 N.M. at 548, 915 P.2d at 304. A related requirement directs the district court to "[make an] inquiry as shall satisfy it that there is a factual basis for the plea." Rule 5-304(G) NMRA; *State v. Willis*, 1997-NMSC-014, ¶ 9, 123 N.M. 55, 933 P.2d 854. Finally, the record must contain an "affirmative showing that [the] plea was knowingly and voluntarily given." *Garcia*, 121 N.M. at 547, 915 P.2d at 303; *see also Boykin*, 395 U.S. at 242-43.

**{10}** At the January 2009 plea hearing in this case, the district court tried to satisfy the requirements of Rules 5-303(F) and 5-304(G) by establishing, inter alia, a factual basis for the charges and engaging Defendant in an exchange intended to confirm the knowing, intelligent, and voluntary character of his plea. At the beginning of the plea hearing, the judge asked Defendant whether he understood the charges. The district judge then asked Defendant whether he understood the maximum prison sentence possible in the absence of the plea deal. The exchange proceeded as follows:

DISTRICT COURT: Have you gone over this guilty plea agreement with your attorneys?

DEFENDANT: Yes.

DISTRICT COURT: Do you understand what it says? Do you understand what you're charged with?

DEFENDANT: Yes.

DISTRICT COURT: Do you understand that in the absence of this agreement you could have life plus nine and a half years?

DEFENDANT: What, what was that last thing?

DISTRICT COURT: Life plus nine and a half years, in the absence of this agreement, that could, could have been the sentence that had been imposed.

DEFENDANT: Oh. Okay, that's not the . . .

DISTRICT COURT: That's not the one. That's just what would have, that's what could have happened.

4

DEFENDANT:  Okay.  Sorry about that.

At no point did the district court apprise Defendant of the mandatory minimum sentence as required under Rule 5-303(F)(2).  *See Montler*, 85 N.M. at 60, 509 P.2d at 252 ("Ordinarily an accused should be advised of the maximum possible sentence and the minimum mandatory sentence which can be imposed.").

{11}    After asking Defendant about a range of other requirements set forth in Rule 5-303(F) such as Defendant's right to a trial before a jury, the district court asked the State and Defendant to address the factual basis for the charges included in the plea.  Regarding the first degree murder count, the State offered an account of the evidence it intended to present at trial to prove that Defendant's murder was "willful, deliberate and premeditated" as required by Section 30-2-1(A)(1).  In particular, the State asserted that Defendant had prepared for the killing by acquiring a gun and ammunition, expressing his desire to kill Victim prior to the killing, and "lying in wait" for Victim.  Further, the State conveyed that three witnesses saw Defendant shoot Victim.  In response, defense counsel expressed "sharp disagreement" regarding the murder charge, suggesting that Defendant had not planned the crime and had forfeited prior opportunities to "go after the victim" if that was his design.  However, defense counsel conceded that because Defendant had apparently chased Victim around a house and then shot Victim as Victim lay on his back, with his arms outstretched in surrender, the jury "most likely would find this to be a murder in the first degree."

{12}    The district court then accepted the plea agreement, only asking Defendant whether it was voluntary and encouraging Defendant to answer "yes."  The exchange proceeded as follows:

> DISTRICT COURT:  We're going to find that the Defendant and the prosecutor have entered into this plea agreement, [Defendant] understand[s] it, [Defendant] consent[s], and it's voluntary, that there's nobody here—you've got, you've got a roomful of people who are family members, and you understand that this is voluntary.  *Why don't you say "yes," Albert*.
>
> DEFENDANT:  Yes.
>
> DISTRICT COURT:  Thank you.

(Emphasis added.)  The judge then announced that it was a "reasonable plea under these circumstances" and "concluded that [Defendant] knowingly, voluntarily, and intelligently [pled] guilty to these charges, and [the district court will] accept your plea."

{13}    However, Defendant then expressed confusion about the sentencing set forth in the plea agreement.  After the district court enumerated the sentencing terms contained in the plea, Defendant asked, "How much do I have to do?"  Defense counsel interjected that he had "explained" the sentencing framework in the plea.  Moments later, Defendant expressed

5

additional confusion about the concurrent nature of his sentences. The district court did not conduct any inquiry to confirm Defendant's understanding of the agreement's sentencing terms. *See* Rule 5-303(F)(2).

**{14}** Soon thereafter, the district court permitted Defendant to make a series of statements where Defendant expressed doubt about his culpability for the charges contained in the plea. First, Defendant implied that his actions that gave rise to the assault and battery charge were the result of provocation by the law enforcement officers, asking the court if "there ain't no justice for that . . . so they get away with that?" Next, Defendant turned to the first degree murder charge, exclaiming that "I don't think, I don't believe it was, uh, premeditated." The district court responded by advising Defendant that the issue of premeditation "would have been up to the jury to decide." The court did not ask Defendant whether he understood the "nature" of these charges. *See* Rule 5-303(F)(1).

**{15}** Following a lengthy exchange between the district court, Defendant, and defense counsel regarding several issues, including Defendant's complaints about his treatment in the criminal justice system, the State rose to ask the court to make additional inquiries regarding whether Defendant had "willfully" pled to the first degree murder charge. Citing Defendant's "statement that he doesn't feel like he committed the willful and deliberate murder," the State asked the district court to "inquire [of Defendant] that he understands that he's willfully giving up his claim and that he's willfully making his plea." Initially the district court agreed to "do that," but the judge first complained that Defendant had already agreed that the plea was willful, and then asserted that Defendant's comments were driven by a wish that "his life had been different." Defendant responded with complaints about his family and his treatment in the foster care system. This exchange apparently exasperated the court and prompted the court to "wish [Defendant] well" and abruptly recess the hearing, instead of making further inquiries of Defendant regarding his understanding of the first degree murder charge.

**{16}** Rule 5-303(F) requires the court to ascertain that a defendant *understands* the terms and charges set forth in a plea agreement, not merely engage in a formulaic exchange about the Rule 5-303 requirements. *See Montler*, 85 N.M. at 61, 509 P.2d at 253 ("Concerning what must be stated to an accused by the trial court in connection with a proffered plea of guilty, it is . . . difficult to establish a strict, unvarying formula of words."); *see also* 2 Mark S. Rhodes, *Orfield's Criminal Procedure under the Federal Rules* § 11.30, at 111 (2d ed. 1985) ("Simply asking the defendant if he understood the charges against him is insufficient.").

**{17}** In the plea hearing, the district court did little more than secure perfunctory one-word answers in addressing Defendant's understanding regarding the content and consequences of the plea agreement. At the outset of the proceeding, the court asked Defendant, "Do you understand what you're charged with?" prompting Defendant to reply, "Yes." After running through various Rule 5-303(F) factors with Defendant and establishing a factual basis for the charges, the district court concluded that "Defendant and the prosecutor have entered into

6

this plea agreement." It was not until the end of this announcement that the court inquired whether the agreement was voluntary. When Defendant failed to volunteer a verbal response, the district court appeared to cajole Defendant into providing an affirmative response, a tepid "yes" after a pause lasting for several seconds.

{18}    It was only after the district court accepted the plea and allowed Defendant to make several statements that the inadequacy of this exchange between the court and Defendant became apparent. In these statements, Defendant protested his culpability for the assault and battery charges, expressed confusion about sentencing, and challenged the premeditation element of the first degree murder charge. The issue of premeditation was important enough that it caught the State's attention when it solicited the court to revisit the "willful" aspect of Defendant's plea and his understanding of the first degree murder charge. Despite both this overt invitation and the expression of concern by the State, the district court ultimately failed to ask Defendant any further questions regarding the murder charge, a crime carrying a term of life in prison.

{19}    In the past we have faced analogous circumstances, ruling that it is incumbent on the court to clarify the understanding of a defendant who demonstrates misunderstanding regarding the charges and sentencing set forth in a plea agreement. *Garcia*, 121 N.M. at 549, 915 P.2d at 305. In *Garcia*, the defendant pled guilty to felony murder and was asked by the court to provide a factual basis for the charge at a plea hearing. *Id*. at 545, 915 P.2d at 301. Following the defendant's recitation of the facts, the State expressed concern that the defendant's account was an inadequate factual basis. *Id*. The court "ascertained" that the defendant did not understand felony murder, and then recessed to allow the defendant's counsel "to fully explain to [the defendant] all the elements of felony murder." *Id*. During the recess, defense counsel "discussed with [the defendant] the leading case concerning the relevant element of felony murder." *Id.* at 549, 915 P.2d at 305. However, following the recess, the court failed to independently ascertain whether the defendant's "misunderstanding of the nature of felony murder had been sufficiently corrected." *Id*. at 548, 915 P.2d at 304. We held that the court's failure to set forth the defendant's understanding of the elements of the felony murder charge on the record constituted error. *Id*. at 549-50, 915 P.2d at 305-06. We also held that the court's failure to advise the defendant regarding the range of possible sentences associated with his plea constituted error. *Id*. We reversed and remanded accordingly. *Id*.

{20}    We see no reason to depart from the reasoning of *Garcia* in this case, and the State did not urge us to distinguish *Garcia* in briefing this appeal. There are numerous parallels between *Garcia* and the case at hand. First, the defendants in both cases expressed confusion regarding the crimes subject to their pleas, with both unclear about the elements of their first degree murder charges. Second, neither defendant was fully apprised of the range of sentencing for the crimes subject to their pleas. Third, the prosecutor in each case alerted the district court to concerns regarding the adequacy of the defendant's understanding. In addition, in the case at hand, defense counsel made it clear to the district court at the beginning of the proceeding that Defendant harbored "sharp disagreement" over

7

the premeditation element for the murder charge.  Finally, unlike *Garcia*, in this case there was neither a recess to allow defense counsel to address Defendant's misunderstanding nor any claim by defense counsel that they had undertaken efforts to remedy Defendant's apparent misunderstanding.  Despite all these indicia of uncertainty on Defendant's part, the district court failed to take any concrete steps to confirm Defendant's understanding as to these issues on the record.  *Cf. Cross v. State*, 964 So. 2d 535, 539 (Miss. Ct. App. 2007) ("When [the defendant] appeared to be uninformed of the consequences of her guilty plea . . . the trial court consistently continued to address the perceived point of confusion with [the defendant] until she stated that she understood the proceedings and until the trial court was satisfied that she understood the consequences of her guilty plea and the rights that she would waive if she did plead guilty."); *People v. Wilson*, 692 N.E.2d 422, 427 (Ill. App. Ct. 1998) ("The record shows that each time defendant expressed confusion, the trial court clarified or explained the issue, repeatedly inquired whether defendant understood, and did not continue until defendant confirmed that he understood.").

**{21}**    As a result, we conclude that Defendant's plea was not knowing, intelligent, and voluntary, and that the district court abused its discretion by denying Defendant's motion to withdraw his plea.  We reverse and remand for proceedings consistent with this Opinion.

**{22}    IT IS SO ORDERED.**

 

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

**Topic Index for *State v. Ramirez*, Docket No. 31,905**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| CT-RF | Right to Confrontation |
| CT-SL | Self-Incrimination |

| | |
|---|---|
| CT-TJ | Trial by Jury |
| CT-WR | Waiver of Rights |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-AO | Assault or Battery on a Peace Officer |
| CL-HO | Homicide |
| CL-MU | Murder |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DU | Due Process |
| CA-GP | Guilty Plea |
| CA-PP | Plea and Plea Bargaining |
| CA-RA | Right Against Self-Incrimination |
| CA-RJ | Right to Trial by Jury |
| | |
| **JG** | **JUDGES** |
| JG-AD | Abuse of Discretion |
| | |
| **JR** | **JURIES** |
| JR-TR | Right to Trial by Jury |