IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-009

Filing Date: December 1, 2020

Nos. A-1-CA-34190, A-1-CA-34191,
and A-1-CA-34192 (consolidated)

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

MILLARD DOYLE YANCEY,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
Mark Terrence Sanchez, District Judge

Certiorari Denied, March 17, 2021, S-1-SC-38627.  Released for Publication May 4, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Matthew J. O'Gorman, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**IVES, Judge.**

**{1}**    Defendant Millard Yancey appeals an order denying his motion to withdraw his guilty pleas. We agree with Defendant that the district court accepted those pleas without informing him of the nature of the charges against him and determining that he understood those charges, as Rule 5-303(F) NMRA requires. In each of Defendant's

three cases, consolidated before us, the factual allegations in the charging documents suggest that the fraud and embezzlement charges are mutually exclusive because they involved the same property and the same victim. However, the State did not pursue its charges in the alternative, and the State and Defendant entered into a plea agreement in each case under which Defendant would plead guilty to *both* fraud and embezzlement. The district court accepted Defendant's guilty pleas without providing him with any explanation of the charges to which he pleaded guilty, much less an explanation of how his conduct in each case satisfied the essential elements of *both* fraud and embezzlement. This Rule 5-303(F) error was not harmless because Defendant has shown that he did not receive the necessary explanation from any other source. Because Defendant did not knowingly and voluntarily plead guilty, allowing his six felony convictions and a twenty-one-year sentence of imprisonment to stand would violate his constitutional right to due process. Accordingly, we must reverse the district court's order and remand the case so that Defendant may withdraw his pleas, which will result in the reinstatement of all of the original charges against him.

## BACKGROUND

**{2}** In the fall of 2013, the State filed three criminal informations against Defendant. The first charged him with three second-degree felonies involving victim David Cook: one count of fraud in an amount over $20,000, in violation of NMSA 1978, Section 30-16-6(F) (2006); one count of embezzlement in an amount over $20,000, in violation of NMSA 1978, Section 30-16-8(F) (2007); and one count of racketeering, in violation of NMSA 1978, Section 30-42-4(A) (2002, amended 2015). The second information involved victims Thurman and Genevieve Duncan and charged Defendant with three additional second-degree felonies: one count of fraud in an amount over $20,000, one count of embezzlement in an amount over $20,000, and one count of racketeering. The third information identified the victim as the Lovington Men's Prayer Group and charged Defendant with two third-degree felonies: fraud in an amount over $2,500, in violation of Section 30-16-6(E), and embezzlement in an amount over $2,500, in violation of Section 30-16-8(E).

**{3}** The three criminal informations summarize charges initially brought in criminal complaints that include the State's factual allegations. In the Cook complaint, the State alleges that between 2004 and 2011, Defendant asked Cook, a client of Defendant's accounting firm, to make tax payment checks out to Defendant. According to the complaint, instead of using all of Cook's money to pay taxes, Defendant "stole" the vast majority of the money: approximately $90,000. Similarly, in the Duncan complaint, the State alleges that Defendant handled monthly payroll taxes for the Duncan business for many years and that Defendant told the principal owners "that they needed to make the checks meant for the IRS or New Mexico Department of Taxation payable directly to [Defendant] because 'their bank was in Texas but their business was located in New Mexico.' " The complaint states that in October 2012 the victims learned from the IRS "that they were $39,927.17 in arrears." Finally, the Men's Prayer Group complaint alleges that Defendant, while acting as the victim's treasurer, took for his own use $4,235 that Defendant was responsible for depositing in the victim's bank account.

**{4}**     In March 2014, after Defendant waived his arraignments, Defendant and the State entered into plea agreements in all three cases. Defendant agreed to plead guilty to the fraud and embezzlement charges in all three cases, and the State agreed to dismiss the racketeering charges in the Cook and Duncan cases.

**{5}**     During the change of plea hearing, which addressed all three cases, the following events pertinent to our analysis occurred.[1] The judge began the plea colloquy by asking Defendant, "Do you understand the allegations in the criminal information [in the Cook case]?" Defendant responded, "Yes, sir, I do." The judge then paused to note that the plea agreements were unsigned, indicating that it would be necessary for Defendant to sign them before continuing. Defendant's counsel then informed Defendant that "[b]y signing here, you're acknowledging that you understand the charges that you're pleading to[.]" After receiving the signed plea agreements, the court asked Defendant whether he understood the allegations in the criminal information in the Cook case, and Defendant responded, "Yes, sir." Turning to the next set of charges, the judge asked, "[D]o you understand the allegations in the criminal information in [the Duncan case]?" Defendant responded, "Yes, sir." Next came a similar exchange about the final set of charges. The judge asked, "Do you understand the charges in connection with [the Men's Prayer Group] case?" Defendant again responded, "Yes, sir." After this exchange about the individual cases, the court asked Defendant's counsel whether "a basis in fact [existed] . . . for believing that [Defendant was] guilty of the charges in all cases"; defense counsel responded that there did. The judge then asked whether Defendant "acknowledge[d] and agree[d] that the State ha[d] some evidence to prove [his] guilt of all the charges in all three cases." Defendant responded "Yes." Finally, the judge asked, "If you have entered into a plea agreement with the State, do you understand the agreement and do you consent to its terms?" "Yes, sir," Defendant answered. At no point during the hearing did the prosecutor or defense counsel describe the charges against Defendant or the conduct he had engaged in that would satisfy the essential elements of fraud and embezzlement. The district court accepted the guilty pleas in all three cases, finding that Defendant entered those pleas knowingly, voluntarily, and intelligently.

**{6}**     After the court imposed a total sentence of twenty-one years of imprisonment for all of Defendant's convictions, he moved to withdraw his guilty pleas, arguing that they were not knowing and voluntary. During a hearing on the motion, Defendant testified that he did not understand the basis for his fraud and embezzlement convictions. Defendant also explained that he had never had any interactions with the criminal legal system before being charged in these three cases, that he had retained a lawyer at the outset, that he had only one conversation with that lawyer, and that the lawyer did not have the charging documents with her at the time and only gave him a "general idea" of

---

[1]The colloquy included exchanges about various other matters not pertinent to our analysis, including the potential sentences and other consequences of pleading guilty, the dismissal of the two racketeering charges, additional charges that the State agreed not to pursue, and the rights that Defendant would waive by pleading guilty.

the charges. Defendant testified that the lawyer who represented him at the plea hearing did not explain the elements of fraud and embezzlement.

**{7}** Defendant appealed, arguing that the district court should have allowed him to withdraw his guilty pleas because the court failed to (1) adequately inform him of the nature of the charges to which he was pleading guilty; (2) determine whether there was a factual basis for the pleas; and (3) inform Defendant of the maximum term of incarceration to which the pleas exposed Defendant. In the alternative, Defendant argued that he pleaded guilty because he was deprived of his constitutional right to the effective assistance of counsel.

**{8}** A divided panel of this Court reversed on a ground not raised by Defendant. The majority held that "[b]ecause Defendant did not confess his guilt in open court by actually pleading guilty on the record in open court, there is no legal conviction[.]" *State v. Yancey*, 2017-NMCA-090, ¶ 37, 406 P.3d 1050, *rev'd*, 2019-NMSC-018, 451 P.3d 561. The dissent concluded that the law does not impose "a mandatory requirement that a defendant verbally plead guilty on the record before the district court could accept the plea." *Id.* ¶ 48 (M. Zamora, J., dissenting). Rather than reversing based on the issue that this Court raised sua sponte, the dissent would have resolved the appeal by addressing the issues raised by Defendant. *Id.* ¶ 49.

**{9}** Our Supreme Court granted the State's petition for a writ of certiorari and reversed, concluding that the majority's "bright-line rule" requiring a "formulaic recitation of the words 'I plead guilty' (or the like) [was] inconsistent with New Mexico and federal law." *Yancey*, 2019-NMSC-018, ¶ 21. The Court held that the district court did not err by failing to ask Defendant to recite such words on the record, *id.*, explaining that appellate review of whether a criminal defendant has, in fact, pleaded guilty instead depends on an assessment of "the totality of the circumstances." *Id.* ¶¶ 12-15 (internal quotation marks omitted). Accordingly, the Court vacated this Court's opinion and remanded the case to this Court to consider the four issues Defendant raised. *Id.* ¶¶ 21-22.

## DISCUSSION

**{10}** Because we conclude that Defendant was not properly advised of the nature of the charges to which he pleaded guilty, we reverse on this basis and do not reach the remaining issues on appeal. We begin by describing our standard of review. We then explain why the plea colloquy did not comply with Rule 5-303(F) and why this error was not harmless but was instead of constitutional magnitude.

## I. Standard of Review

**{11}** "A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court, and we review the trial court's denial of such a motion only for abuse of discretion." *State v. Garcia*, 1996-NMSC-013, ¶ 7, 121 N.M. 544, 915 P.2d 300. Regardless of whether a defendant moves to withdraw a plea before or after imposition of sentence, the trial court should allow the withdrawal if a plea is "involuntary or

entered without the requisite knowledge" or if withdrawal is necessary to correct some other manifest injustice. *State v. Hunter*, 2005-NMCA-089, ¶ 22, 138 N.M. 96, 117 P.3d 254, *aff'd on other grounds*, 2006-NMSC-043, 140 N.M. 406, 143 P.3d 168.

## II.    Due Process and Rule 5-303

**{12}**    Our analysis focuses on Rule 5-303(F) and the constitutional rights it is designed to protect. The rule "essentially codifies" *Boykin v. Alabama*, 395 U.S. 238 (1969), in which the United States Supreme Court "held that it was an error for the trial court to accept a guilty plea absent an affirmative showing on the record that the plea was voluntary and intelligent." *Garcia*, 1996-NMSC-013, ¶ 9.[2] The part of Rule 5-303(F) pertinent to the question before us states that "[t]he court shall not accept a plea of guilty or no contest without first, by addressing the defendant personally in open court, informing the defendant of and determining that the defendant understands . . . the nature of the charge to which the plea is offered[.]" This requirement is no mere formality; it is critical that the court ensure that the person who has been accused of particular criminal offenses understands the nature of those offenses before he or she decides to plead guilty. The court must fulfill this obligation in order "to ensure a guilty plea is made knowingly and voluntarily." *Garcia*, 1996-NMSC-013, ¶ 8; *see United States v. Lloyd*, 901 F.3d 111, 118-19 (2d Cir. 2018) (recognizing that, although a district court's obligations under Federal Rule of Criminal Procedure 11 are "seemingly routine, and comprised of exchanges that may appear rote," "they are a serious matter" and "should not be casually discharged"), *cert. denied*, ___ U.S. ___, 140 S. Ct. 55 (2019).[3] A person who is convicted based on a plea that is not knowing and voluntary suffers a deprivation of the constitutional right to due process. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969) ("[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void."). Only through a knowing and voluntary guilty plea may a defendant validly waive certain rights that are constitutionally guaranteed to every person, including the right to trial by jury, the right to confront the prosecution's witnesses, and the privilege against self-incrimination. *Id.* Because a person waives those rights by pleading guilty, such a plea is "a grave and solemn act to be accepted only with care and discernment[.]" *Brady v. United States*, 397 U.S. 742, 748 (1970). Rule 5-303(F) requires such care and discernment, and compliance with the rule protects "the important rights of the defendant and ensures the proper administration of criminal law." *Garcia*, 1996-NMSC-013, ¶ 12.

---

2At the time *Garcia* was decided, the pertinent language was in Rule 5-303(E)(1) NMRA (1996). Although moved to Subsection (F)(1) of the Rule, that language has not changed, and we therefore rely on *Garcia* and its progeny.

3Rule 5-303(F) is roughly modeled on, though not identical to, Federal Rule of Criminal Procedure 11(b). Our Supreme Court has found federal precedent persuasive in interpreting the requirements of Rule 5-303(F). *See, e.g., Yancey*, 2019-NMSC-018, ¶ 13.

**{13}** Compliance does not turn on whether the court "strictly adhere[d] to a script[,]"[4] *id.*, but instead on whether the court "determine[d] by some means that the defendant *actually* underst[ood] the nature of the charges." *United States v. Andrades*, 169 F.3d 131, 134 (2d Cir. 1999) (emphasis added, internal quotation marks and citation omitted); *see Yancey*, 2019-NMSC-018, ¶ 20 (expressing disapproval of the notion that "certain specific words . . . can ever function, in and of themselves, as irrefutable proof that the defendant knowingly and voluntarily entered a guilty plea"); *State v. Montler*, 1973-NMSC-043, ¶ 4, 85 N.M. 60, 509 P.2d 252 (recognizing that it is "difficult to establish a strict, unvarying formula of words" "[c]oncerning what must be stated to an accused by the trial court in connection with a proffered plea of guilty"). A guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy*, 394 U.S. at 466.

**{14}** And so we begin by examining how the law defining fraud and embezzlement relates to the facts of Defendant's cases—a relationship that makes the charges against him complex. *See United States v. Pineda-Buenaventura*, 622 F.3d 761, 770-71 (7th Cir. 2010) (recognizing that the complexity of a charge is one of the circumstances to consider in determining whether the accused received an adequate explanation). Because of the close relationship between fraud and embezzlement and critical differences between the essential elements of the two crimes, when a person is accused of perpetrating fraud and embezzlement against the same victim, as Defendant was here in all three cases, it is necessary to pay careful attention to the elements of the offenses and the factual allegations. Although fraudulent intent is an essential element of both fraud and embezzlement, the same facts cannot support a conviction for both offenses: fraud and embezzlement are mutually exclusive when the charges arise from the deprivation of the same property from the same victim. *See generally State v. Hornbeck*, 2008-NMCA-039, ¶¶ 10-16, 143 N.M. 562, 178 P.3d 847. A person who commits fraud and a person who commits embezzlement both acquire property, but they do so in different manners. An element of fraud is that "the property was *acquired unlawfully*, by deception, based on words or conduct that misrepresented a fact[,]" and the crime "is complete at the point when [the perpetrator] receives the property." *Id.* ¶ 12 (emphasis added); *see* UJI 14-1640 NMRA (setting forth the essential elements of fraud, including that the defendant wrongfully obtained property by making a promise or misrepresenting a fact while "intending to deceive or cheat" the victim); *accord* § 30-16-6(A). By contrast, an element of embezzlement is "that the property initially was *acquired lawfully* by entrustment," *Hornbeck*, 2008-NMCA-039, ¶ 14 (emphasis added), and the crime is complete "when [the property] is fraudulently converted to [the perpetrator's own] use." *Id.* ¶ 12; *see* UJI 14-1641 NMRA (setting forth the essential elements of embezzlement, including that the defendant "was entrusted with" the property and "converted" it with "fraudulent[] inten[t] to deprive the owner of the . . . property" "[a]t the time the defendant converted" the property); *accord* § 30-16-8(A). Because it is impossible to acquire the same property both unlawfully through deception and lawfully through entrustment, the same conduct cannot satisfy the essential

---

4However, "a checklist, script, or other tool" may be an effective way to ensure "rigorous compliance" with the required procedures and thereby "avoid casting unnecessary doubt on the voluntary and knowing nature of the guilty pleas that [courts] accept[]." *Lloyd*, 901 F.3d at 121.

elements of both fraud and embezzlement; a person cannot be convicted of both fraud and embezzlement for depriving a victim of the same property. *Hornbeck*, 2008-NMCA-039, ¶¶ 10, 14; *see also id.* ¶ 13 (quoting 29A C.J.S. *Embezzlement* § 5 (2007) ("'[O]ne cannot embezzle that which [that person] has already stolen.' ")); *cf. State v. Kalinowski*, 2020-NMCA-018, ¶¶ 10, 13, 460 P.3d 79 (holding that insufficient evidence supported the entrustment element of an embezzlement conviction, *id.* ¶ 13, on the basis of the principle that "[o]ne cannot be guilty of embezzlement if he converts his own property," *id.* ¶ 10 (internal quotation marks and citation omitted)), *cert. denied* (No. S-1-SC-38102, Feb. 24, 2020). Under such circumstances, the two offenses are mutually exclusive, and the proper way to charge both is in the alternative: the defendant committed either fraud or embezzlement. *Hornbeck*, 2008-NMCA-039, ¶ 10.

**{15}** Although Defendant pleaded guilty to *both* fraud and embezzlement in each case, the district court failed to ensure that Defendant understood the nature of either offense, much less ensure that he understood how his conduct satisfied the essential elements of both offenses. The court did not engage Defendant in *any* discussion regarding "the nature of the charge[s.]"[5] Rule 5-303(F). The court's effort to ascertain that Defendant understood the charges was perfunctory—a single generic question addressing the multiple charges in each case. Defendant's affirmative responses do not provide a basis for concluding that Defendant *actually* understood how his conduct satisfied the elements of the charges against him. *See State v. Ramirez*, 2011-NMSC-025, ¶ 9, 149 N.M. 698, 254 P.3d 649 ("[T]he district court must be satisfied that the defendant understands the essential elements of the charges that are subject to the plea.");[6] 2 Mark S. Rhodes, *Orfield's Criminal Procedure under the Federal Rules* § 11.30, at 111 (2d ed. 1985) ("Simply asking the defendant if he understood the charges against him is insufficient."), *cited with approval in Ramirez*, 2011-NMSC-025, ¶ 16; *Andrades*, 169 F.3d at 135 (concluding that the district court failed to comply with Federal Rule of Criminal Procedure 11(c)(1) by reading the charge, which did not outline the elements of the offense or the relevant facts, and then asking the defendant whether he understood, receiving a simple affirmative answer, and making a similar inquiry of defendant's counsel). The district court did not fulfill its obligation by engaging in what was, at best, "a formulaic exchange about the Rule 5-303 requirements." *Ramirez*, 2011-NMSC-025, ¶ 16.

**{16}** We have also considered the part of the colloquy aimed at establishing factual bases for the guilty pleas, but it likewise offered Defendant no information about the nature of the charges. The district court asked Defendant's counsel, "Does there exist a basis in fact . . . that your client is guilty of the charges in all cases?" Counsel responded, "There does, Your Honor." The judge then asked Defendant, "Do you acknowledge and agree that the State has some evidence to prove your guilt of all the charges in all three cases?" Defendant responded, "Yes." Because this exchange did

---

[5]Neither the prosecutor nor defense counsel provided any information about the charges during the plea hearing.

[6]Whether the quoted language from *Ramirez* means that recitation of the elements is an absolute requirement under Rule 5-303(F) is not dispositive in this case, and we therefore do not address it.

nothing to alert Defendant to the nature of the charges, it gives us no basis to conclude that Defendant actually understood the State's case for guilt under each charge.[7]

**{17}** We hold that the district court erroneously deviated from Rule 5-303(F) by failing to ensure that Defendant understood the nature of the fraud and embezzlement charges to which he pleaded guilty.

### III.    The Rule 5-303(F) Error Was Not Harmless

**{18}** Not every Rule 5-303(F) violation requires reversal because New Mexico law, like federal law, draws a distinction between errors that are merely technical and therefore harmless and errors that affect the substantial rights of the defendant, invalidating the plea.[8] *See Garcia*, 1996-NMSC-013, ¶¶ 11-12 (explaining that under New Mexico law, as under federal law, a district court's failure to comply with the requirements of the rule is harmless if the error does not affect the defendant's substantial rights); *United States v. Szymanski*, 631 F.3d 794, 801 (6th Cir. 2011) ("Technical violations of [Federal Rule of Criminal Procedure] 11 do not merit the vacating of a conviction obtained by a guilty plea; Rule 11 contains a harmless-error provision stating that an error is harmless only if it does not 'affect substantial rights.' " (quoting Fed. R. Crim. P. 11(h)). A defendant who seeks to withdraw a plea must "demonstrate that the failure to comply with the prescribed plea procedure prejudiced [the defendant's] ability to knowingly and voluntarily enter [the] plea." *State v. Jonathan B.*, 1998-NMSC-003, ¶ 7, 124 N.M. 620, 954 P.2d 52; *see State v. Moore*, 2004-NMCA-035, ¶ 14, 135 N.M. 210, 86 P.3d 635 (stating that a defendant bears the burden of demonstrating prejudice). Thus, we will not invalidate a guilty plea where the record "affirmative[ly] show[s]" that the plea was knowingly and voluntarily entered. *Boykin*, 395 U.S. at 242. "[A]bsent a showing of prejudice to the defendant's right to understand his guilty plea and its consequences, substantial compliance" with Rule 5-303(F) suffices. *Garcia*, 1996-NMSC-013, ¶ 12. Whether a trial court substantially complied with the rule hinges on the "unique facts" of the case, *id.*, and we consider "the totality of the

---

[7]Although the accused's intelligence and education may be pertinent under some circumstances, *see United States v. LeDonne*, 21 F.3d 1418, 1423 (7th Cir. 1994), Defendant's intelligence and knowledge of accounting have no bearing on the issue before us because they are no substitute for an explanation of how concepts unfamiliar to those without *legal* education or training—the elements of fraud and embezzlement—relate to the facts of his case. *See United States v. Wetterlin*, 583 F.2d 346, 351 (7th Cir. 1978) (recognizing that characteristics of the defendant, including education and intelligence, "can[not] be a substitute for the explicit requirement of the rule that the judge personally, in open court, on the record, determine that the defendant knows and understands the nature of the charges"); *United States v. Camacho*, 233 F.3d 1308, 1314-15 (11th Cir. 2000) (noting that "the level of inquiry required to satisfy [Federal Rule of Criminal Procedure] 11(c)(1) varies from case to case[,]" depending, among other things, on "the defendant's sophistication and intelligence[,]" but recognizing that the inquiry ultimately remains "whether the district court adequately ensured that a defendant understood the nature of the charge" (internal quotation marks and citations omitted)); *cf. United States v. Pena*, 314 F.3d 1152, 1156 (9th Cir. 2003) (recognizing the importance of explaining "legal argot and other legal concepts that are esoteric to an accused" (internal quotation marks and citation omitted)); *Wetterlin*, 583 F.2d at 350 (same).

[8]To reach its conclusion that the harmless error doctrine applies to Rule 5-303(F) errors, our Supreme Court relied in part on federal precedent interpreting Federal Rule of Criminal Procedure 11(h). *See Garcia*, 1996-NMSC-013, ¶¶ 11-12.

circumstances available from the record at the time the plea is taken." *Yancey*, 2019-NMSC-018, ¶ 12 (internal quotation marks and citation omitted). Substantial compliance exists if "the record shows the defendant had the requisite information" from some other source at the time of the change of plea. *Garcia*, 1996-NMSC-013, ¶ 17. Although the court need not supply the information, the record must indicate that the court "ascertain[ed] that [the] defendant underst[ood] the . . . charges set forth in a plea agreement[.]" *Ramirez*, 2011-NMSC-025, ¶ 16; *see Marquez v. Hatch*, 2009-NMSC-040, ¶ 6, 146 N.M. 556, 212 P.3d 1110 ("[T]he key consideration is whether the defendant ha[d] full and correct information at the time of the plea.").

**{19}**    Our inquiry is therefore whether the record shows that Defendant acquired an understanding of the nature of the charges from some source other than the district court. *See Garcia*, 1996-NMSC-013, ¶ 17. Because neither the prosecutor nor Defendant's counsel provided any information about the nature of the charges during the plea hearing, we must determine whether Defendant received the requisite explanation in some other manner.

**{20}**    We begin by analyzing whether the plea agreements and charging documents fill the gap in explanation created by the Rule 5-303(F) error. *See Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 197-98 (2d Cir. 2002) (considering plea agreement); *Garcia*, 1996-NMSC-013, ¶ 18 (considering charging documents); *Miller v. Champion*, 161 F.3d 1249, 1256 (10th Cir. 1998) (observing that "courts have concluded" in some cases "that the indictment or information supplied the defendant with the necessary notice of the elements of the crimes to which [the defendant] pleaded guilty"). All three plea agreements indicate that Defendant would plead guilty to both fraud and embezzlement, which excludes the possibility that Defendant was charged with those offenses in the alternative. But the agreements do not set out the elements of the crimes or include a statement of facts describing the conduct that made Defendant guilty of both offenses. Instead, the agreements describe Defendant's alleged crimes by reference to the three criminal informations.

**{21}**    Unlike the plea agreements, the criminal informations accurately set out the elements of both fraud and embezzlement, but they do not describe how Defendant's conduct satisfies the elements of both offenses in each case. Reading the informations in the Duncan and Cook cases in a manner consistent with the plea agreements in those cases, the State charged Defendant with depriving each victim of at least $20,000 through fraud plus at least $20,000 through embezzlement for a grand total of more than $40,000. Stated differently, the State alleged that Defendant used misrepresentations to acquire at least $20,000 from each victim and, in addition, acquired more than $20,000 from each victim through entrustment and then converted this additional amount to his own use. The Men's Prayer Group information is similar. It alleges that Defendant deprived the victim of more than $2,500 through fraud (i.e. misrepresentation) plus an additional amount in excess of $2,500 through embezzlement (i.e. entrustment and conversion). Due process requires that the accused "possess[] an understanding of the law in relation to the facts[,]" *McCarthy*, 394

U.S. at 466, but none of the criminal informations include factual allegations that satisfy the essential elements of both fraud and embezzlement.

**{22}**     Even assuming that Defendant examined the criminal complaints to obtain information about how his alleged conduct amounted to *both* fraud and embezzlement against each victim, the complaints do not adequately explain the charges. None of the complaints describe fraud involving the requisite amount of money *in addition to* embezzlement involving the requisite amount of money. The allegations in the Duncan complaint suffice to explain either a charge of second-degree fraud (acquiring over $20,000 through misrepresentation) *or* second-degree embezzlement (acquiring over $20,000 through entrustment). Similarly, the allegations in the Men's Prayer Group complaint suffice to explain either a charge of fourth-degree fraud (acquiring over $2,500 through misrepresentation) *or* fourth-degree embezzlement (acquiring over $2,500 through entrustment). Although the Cook complaint alleges that Defendant acquired enough money (in excess of $90,000) to satisfy the minimum amount for two second-degree felonies (over $40,000), it alleges that Defendant acquired all of that money in the same manner. It does not allege that Defendant acquired over $20,000 through misrepresentation (fraud) and an additional $20,000 through entrustment (embezzlement).[9]

**{23}**     Because the plea agreements and charging documents do not explain the nature of the charges to which Defendant pleaded guilty, those documents provide no basis for concluding that the absence of such an explanation during the plea colloquy was harmless error.

**{24}**     The only other conceivable way that Defendant might have obtained the requisite information was from defense counsel before the change of plea hearing, but the record is silent as to whether this occurred. Although "it may be appropriate to presume that in

---

9The State asserts that the charging documents demonstrate that the relationship between fraud and embezzlement had no bearing on the voluntariness of Defendant's plea because Defendant was alleged to have committed the charged offenses through "multiple transactions," and, as we understand the State's briefing, the charging documents therefore allege separate deprivations not subject to the *Hornbeck* rule. We are not persuaded. As we view the record, the fact that Defendant's crimes were alleged to have been committed through multiple transactions heightens, rather than allays, the concern that the charging documents were insufficiently clear to supply Defendant with a constitutionally adequate understanding of the relationship between the facts of each of his cases and the law that governed them. In this connection, we find it sufficient to discuss the Cook complaint, which, as mentioned above, charged Defendant with wrongfully depriving the victim of more than $90,000. In setting out the factual basis for the charges, the complaint alleges that Defendant "stole" a specified amount of money each year over a span of eight years, with the amounts stolen in a given year ranging from roughly $3,000 to roughly $18,000. Nothing in the complaint provides any basis for sorting through those transactions to determine which transactions were alleged to constitute embezzlement or for connecting the complaint's allegations of fraud to specific transactions while excluding others. *See generally State v. Rowell*, 1995-NMSC-079, ¶ 15, 121 N.M. 111, 908 P.2d 1379 (recognizing that the single-larceny doctrine allows for aggregation of amounts of money taken from the same owner by the same defendant in a series of transactions if the defendant acted with a "single criminal intent"). Thus, while the State may be correct in asserting that Defendant, through separate transactions involving separate property, committed both fraud and embezzlement, we cannot conclude that the complaint supplied Defendant with an adequate understanding that that was what he was pleading guilty to.

most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit[,]" *Henderson v. Morgan*, 426 U.S. 637, 647 (1976), such a presumption is only appropriate if there is a factual basis for applying it. *See Hicks v. Franklin*, 546 F.3d 1279, 1284 (10th Cir. 2008) ("We will not apply the presumption that the attorney explained the element to the defendant . . . unless there is some factual basis in the record to support it."); *see also Yancey*, 2019-NMSC-018, ¶ 15 ("Where a reviewing court is presented with a 'silent record,' it is precluded from drawing inferences about whether the plea was voluntary and intelligent." (quoting *Boykin*, 395 U.S. at 243)).

**{25}**   The record in this case does not indicate that Defendant's lawyers explained to him the nexus between the factual allegations against him and the essential elements of fraud and embezzlement. The district court did not ask Defendant whether his attorney had explained the elements of the offenses to him or whether he understood how those elements applied to his conduct. *See Miller*, 161 F.3d at 1255-56 (declining to presume that defense counsel explained the intent element of second-degree murder where the district court did not ask the defendant whether his lawyer had explained the elements to him or whether he understood the elements of the offense). By their respective signatures on the plea agreements, Defendant acknowledged that he had "discussed the case" with his counsel, and defense counsel affirmed that he "ha[d] discussed this case with [Defendant]" and "advised [Defendant of] . . . possible defenses." But such vague assurances by a defendant and defense counsel do not suffice to render the error in this case harmless. A discussion of "the case" or "possible defenses" could take many forms and does not necessarily include any discussion of how the factual allegations relate to the offenses. *See Lloyd*, 901 F.3d at 116, 121 (holding that the district court violated Federal Rule of Criminal Procedure 11 where, although the court ascertained that counsel had explained and the defendant understood "the terms and conditions" of the plea agreement and that the defendant admitted the facts contained in the agreement, it had failed to explain "the elements of the crimes to which [the defendant] was pleading guilty[,]" "failed entirely to ask [the defendant] to describe his participation in the offense," and failed to ask the defendant "to describe his conduct in sufficient detail for the court to be certain that he understood the nature of the offense" (internal quotation marks and citation omitted)); *Andrades*, 169 F.3d at 135 (concluding that the record was insufficient to demonstrate that the defendant understood the nature of a conspiracy charge although the defendant's attorney had informed the court with a brief affirmative response that his client understood the charges and "advised the court that he had discussed the plea agreement with his client[ in a] document [that] did not describe the elements of conspiracy or relevant circumstances"); *cf. Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("[T]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. . . . Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." (citation omitted)).

This record does not support the conclusion that defense counsel supplied Defendant with the required explanation.[10]

**{26}** Because the record does not demonstrate that Defendant received an adequate explanation of how his conduct amounted to both fraud and embezzlement from any source, we hold that the erroneous omission of that explanation from the plea colloquy was not harmless. Without an explanation of the elements of fraud and embezzlement in relation to the particular facts here, Defendant's guilty pleas were not knowing and voluntary, and allowing his convictions to stand would violate his constitutional right to due process of law.

**CONCLUSION**

**{27}** We reverse the district court's order denying Defendant's motion to withdraw his guilty pleas. We remand the case to the district court with instructions to allow Defendant to withdraw his pleas, which will result in the reinstatement of all charges, including the racketeering charges that were dismissed pursuant to the plea agreements.

**{28}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**

---

10The only other evidence on this point is Defendant's testimony at the hearing on the motion to withdraw that neither the lawyer who represented him during his plea hearing nor the lawyer who represented him at the outset of the case explained the charges to him. We will not presume that the district court rejected this uncontradicted testimony. *State v. Gonzales*, 1999-NMCA-027, ¶ 16, 126 N.M. 742, 975 P.2d 355.